MID-STATE CONSTRUCTION COMPANY, and Fidelity & Casualty Company of New York *v.* SECOND INJURY FUND, and Ray Davis

87-221                                    746 S.W.2d 539

Supreme Court of Arkansas
Opinion delivered March 14, 1988
[Rehearing denied April 4, 1988.]

2

*Chester C. Lowe, Jr.*, for appellant.

*E. Diane Graham*, Second Injury Fund, for appellee.

*Gregory Ferguson*, for appellee Ray Davis.

JACK HOLT, JR., Chief Justice. In this case we granted a petition to review a decision of the court of appeals announced in an opinion not designated for publication, *Mid-State Construction Company* v. *Second Injury Fund*, CA 86-429 (Ark. App. July 15, 1987). The court of appeals affirmed an award made by the Workers' Compensation Commission against petitioners Mid-State Construction Company ("Mid-State") and its carrier Fidelity & Casualty Company of New York ("Fidelity") for a compensable injury suffered by an employee of Mid-State. Mid-State and Fidelity challenge the court of appeals' definition of the term "impairment" contained in Ark. Code Ann. § 11-9-525 (1987), formerly codified at Ark. Stat. Ann. § 81-1313(i)(1) (Supp. 1985), as involving a "loss of earning capacity," which to the detriment of Mid-State and Fidelity had precluded liability as

to the Second Injury Fund (the "Fund").

We find that the court of appeals' definition of the term "impairment" as involving a loss of earning capacity is wrong for in the context of Second Injury Fund cases it seriously undermines the purpose of the Fund to encourage hiring of the handicapped. We therefore reverse and remand for proceedings consistent with this opinion.

The claimant, Ray Davis, sustained a compensable back injury in June 1981 while working for the petitioner employer, Mid-State. In 1953, prior to his employment with Mid-State, Davis had lost his right eye in an accident with a firearm. In 1959, Davis suffered a neck injury which necessitated surgery and resulted in a 10% anatomical impairment rating to the body as a whole.

Sometime in 1983, Davis sought compensation for permanent total disability based upon his condition resulting from the 1981 back injury, not the neck injury or loss of the eye. Davis testified that he suffered no disability from those earlier conditions either in combination with or independent from his 1981 injury. In proceedings not relevant to disposition of this review, it was determined both by the Commission and by the court of appeals that in light of Davis' prior conditions, the Second Injury Fund should be made a party.

The Commission subsequently affirmed the following findings of the Administrative Law Judge:

1. Claimant is entitled to an award of permanent partial disability benefits consistent with a rating of 75% to the body as a whole.

2. At the time of his June 4, 1981, compensable injury, claimant was not suffering from a disability in the compensation sense as contemplated by Ark. Stat. Ann. § 81-1313(i)(1) (Supp. 1985).

3. The Second Injury Fund has no liability, and all claims against the Fund are dismissed.

In the opinion now on review, the court of appeals affirmed the Commission's determination that the Second Injury Fund was not liable premised on the fact that there was no evidence that

Davis' condition prior to the 1981 injury involved a loss of earning capacity by which Davis could be said to have been suffering from either a disability or an impairment as those terms are defined in *Osage Oil Co.* v. *Rogers*, 15 Ark. App. 319, 692 S.W.2d 786 (1985), and subsequent decisions of the court of appeals. In this, the court of appeals erred.

Section 11-9-525(a)(1) and (2) provides that the Fund is established and designed to insure that an employer employing a handicapped worker will not, in the event such worker suffers an injury on the job, be held liable for a greater disability or impairment than actually occurred while the worker was in the employer's employment. The employee is to be fully protected in that the Second Injury Fund pays the worker the difference between the employer's liability and the balance of his disability or impairment which results from all disabilities or impairments combined.

■ Section 11-9-525(b)(3) and (4) then provides:

> If any employee who has a permanent partial disability or impairment, whether from compensable injury or otherwise, receives a subsequent compensable injury resulting in additional permanent partial disability or impairment so that the degree or percentage of disability or impairment caused by the combined disabilities or impairments is greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of combined disabilities or impairments, then the employer at the time of the last injury shall be liable only for the degree or percentage of disability or impairment which would have resulted from the last injury had there been no preexisting disability or impairment.

> After the compensation liability of the employer for the last injury, considered alone, which shall be no greater than the actual anatomical impairment resulting from the last injury, has been determined . . . the degree or percentage of [the] employee's disability that is attributable to all injuries or conditions existing at the time the last injury was sustained shall then be determined . . . and the degree or percentage of disability or impairment which

existed prior to the last injury plus the disability or impairment resulting from the combined disability shall be determined, and compensation for that balance, if any, shall be paid out of the Second Injury Trust Fund . . . .

It is clear that liability of the Fund comes into question only after three hurdles have been overcome. First, the employee must have suffered a compensable injury at his present place of employment. Second, prior to that injury the employee must have had a permanent partial *disability* or *impairment*. Third, the disability or impairment must have combined with the recent compensable injury to produce the current disability status. We emphasize that in the case at bar we are concerned only with the second hurdle as it relates to the term impairment.

■ In considering the question of Second Injury Fund liability, we first note that the claimant's former condition need not have met all elements of compensability under workers' compensation law. *Chicago Mill & Lumber Company* v. *Greer,* 270 Ark. 672, 606 S.W.2d 72 (1980). Also, the former condition and the recent compensable injury cannot both have occurred in the course of the employee's employment with the same employer. *McCarver* v. *Second Injury Fund,* 289 Ark. 509, 715 S.W.2d 429 (1986).

■ The term disability has consistently been defined to involve loss of earning capacity; a definition which the petitioners do not challenge and which in the general context of workers' compensation law is set by statute and has been affirmed by this court. *See Rooney* v. *Charles,* 262 Ark. 695, 560 S.W.2d 797 (1978) (citing Ark. Stat. Ann. § 81-1302(e) (Repl. 1976), now Ark. Code Ann. § 11-9-102(5) (1987)). That definition of disability has carried over into the context of Second Injury Fund cases. *See Second Injury Fund* v. *Fraser-Owens, Inc.,* 17 Ark. App. 58, 702 S.W.2d 828 (1986) (defining disability as "loss of earning capacity due to a work-related injury").

■ The statute governing the Second Injury Fund was amended by Act 290 of 1981, which added the words "or impairment" after the word "disability." In *Osage, supra,* the court of appeals construed the legislative intent behind Act 290 as a response to this court's holding in *Greer, supra,* and distinguished between disability and impairment in that the latter

would involve a "non-work related condition." However, the court went further and held that the impairment must have involved loss of earning capacity, as in cases involving a prior permanent partial disability. This was wrong. A claimant's non-work related condition suffered prior to the recent compensable injury need not have involved a loss of earning capacity.

In support of its position in *Osage*, the court of appeals relied upon its opinions in *Harrison Furniture* v. *Chrobak*, 2 Ark. App. 364, 620 S.W.2d 955 (1981), and *Craighead Memorial Hospital* v. *Honeycutt*, 5 Ark. App. 90, 633 S.W.2d 53 (1982), which cases had in turn relied upon our decision in *Greer* and language from 2 Larson, *The Law of Workmen's Compensation*, § 59.32(c), at 10-434 — 437 (1987), to the effect that the prior impairment *had to have been independently producing some disability* prior to the second injury and afterwards. From this, it can be reasoned that if any existing impairments must have been producing some disability, and disability by definition involves loss of earning capacity, all impairments *a fortiori* must have involved loss of earning capacity. This reasoning, however, does not withstand close scrutiny.

The operative language in *Greer*, quoted from Larson's and reproduced by the court of appeals in *Osage*, reads as follows:

> [T]he prior impairment, although not actually a compensable disability, must have been of a physical quality capable of supporting an award *if the other elements of compensability were present.* [Emphasis ours.]

In other words, the claimant's prior impairment must have been of a physical quality sufficient in and of itself to support an award of compensation had the elements of compensability existed as to the cause for the impairment. It is the substantial nature of the impairment which is emphasized, and the elements of compensability, none of which may have existed as to the particular claimant, merely assist the fact finder in his determination as to whether the former condition was sufficient in degree to constitute an impairment qualifying the claimant as one of the "handicapped" for whose benefit the statute was enacted. *Cf. Harrison Furniture, supra*, 2 Ark. App. at 370 (discussing "disability").

Hence, before the fact finder may consider the final question of whether a claimant's former condition combined with a recent compensable injury to produce the current disability status, it must be determined whether the claimant's former condition constituted an "impairment," and the question which would be posed in each case is as follows:

> Is the physical quality of the claimant's former non-work related condition such that, were all other elements of compensability present, it would be capable of supporting an award?

As such, in determining what is an "impairment," loss of earning capacity becomes nothing more than one of the elements of compensability which, *though possibly lacking in the particular case*, constitutes a point of reference under the inquiry posed above.[1]

Any other conclusion flies in the face of Act 290 of 1981. To hold, as did the court of appeals, that there must in fact be evidence that the impairment involved a loss of earning capacity, mandates a prerequisite which (with the narrow exception that the impairment can be non-work related) directly conflicts with the language from Larson and our decision in *Greer* that the impairment need not have been a "compensable disability."

To hold otherwise would result in the unfounded and unintended situation that Second Injury Fund liability is denied in a case where a potential employee suffers from an impairment such as loss of one eye which would clearly be capable of supporting an award if the other elements of compensability were present, and the individual is subsequently hired and suffers a compensable injury, such as loss of the other eye, which combines with the former condition to produce the current disability status — complete blindness. Under the definition of impairment as set out in *Osage*, there is no Fund liability simply because the claimant was unable to demonstrate that the former condition had involved a loss of earning capacity.

---

[1] To construe the clause beginning with "if" in the language quoted from Larson as meaning "provided that or so long as the other elements of compensability were present" would make the statement self-contradictory and lead to absurd results.

This would mean that the present employer and the carrier become potentially liable for the full disability. That result impermissibly distinguishes between two types of handicapped persons, contravenes the statutory scheme which makes employers liable only for the "degree or percentage of disability or impairment which would have resulted from the [recent compensable] injury had there been no preexisting disability or impairment," and defeats the purpose of the Fund to encourage the hiring of the handicapped.

For similar holdings in other jurisdictions, see *Gugelman* v. *Pressure Treated Timber Co.*, 102 Idaho 356, 630 P.2d 148 (1981) (citing case law from Alaska, California, Florida, New York, and Tennessee).

In connection with our discussion of the issue at hand, we point out that the court of appeals has defined the term "handicapped" as meaning "a physical disability that limits the capacity to work." *Fraser-Owens, supra.* To the extent the language "limits the capacity to work" can be considered as conflicting with our holding in this case, the definition cannot stand.

As to other issues before the court of appeals in the decision now on review, such as that dealing with the presumption of loss of earning capacity which attends scheduled injuries, we find it inappropriate to reach those issues in light of our holding in this case. To the extent that argument dealing with solvency of the Fund has any relevancy in this matter, we recognize that it has previously been emphasized that the Second Injury Fund is a limited and restricted fund and that the statute is to be strictly complied with, lest the Fund be exposed to liability in every workers' compensation case. *See, e.g., Fraser-Owens, supra; Second Injury Fund* v. *McCarver*, 17 Ark. App. 101, 704 S.W.2d 639, *aff'd*, 289 Ark. 509 (1986) (Newbern, J., dissenting — explaining *Arkansas Workmen's Compensation Commission* v. *Sandy*, 217 Ark. 821, 233 S.W.2d 382 (1950)). However, under the facts and issues before us, we find that any concern as to solvency of the Fund as it would be affected by our holding today is entirely premature.

Liability of the Fund was in the case at bar ruled out because there was no evidence that Davis' former condition involved a loss

of earning capacity, and therefore Davis did not meet the definition of disability or impairment. We have discarded the definitional prerequisite that an impairment involve a loss of earning capacity. As such, it remains to determine: (1) whether Davis' former neck injury and loss of the right eye constituted an "impairment" in that they were of a physical quality which, were the other elements of compensability present, would have been capable of supporting an award; and (2) whether, even if the first requirement is satisfied, Davis' former condition combined with his 1981 compensable injury to produce a disability greater than that which "would have resulted from the last injury, considered alone and of itself." Section 11-9-525(b)(3).

We find that this matter, on the record before us and in light of the grounds upon which the court of appeals based its holding in the decision on review, should be remanded to the Commission for appropriate proceedings consistent with this opinion and which resolve the issues as outlined.

Reversed and remanded.