SECOND INJURY TRUST FUND *v.* POM, INC.,
Commercial Union Insurance Company, and Carl Ray Taylor

93-1327                                           875 S.W.2d 832

Supreme Court of Arkansas
Opinion delivered May 2, 1994

*David L. Pake*, for appellant.

*Bailey, Trimble, Capps, Lowe, Sellars & Thomas*, by: *Chester C. Lowe, Jr.*, for appellees.

DONALD L. CORBIN, Justice. This case comes to this court on a petition for review from an unpublished decision of the court of appeals. *POM, Inc.* v. *Taylor*, CA 92-1250, (Ark. App. December 1, 1993). We granted petitioner's request on the basis that this case, concerning statutory interpretation, is of significant public interest. Ark. Sup. Ct. R. 1-2(d)(2). The sole issue presented for review is the court of appeals' interpretation of the term "impairment" as it appears in Ark. Code Ann. § 11-9-525(b)(5) (1987):

> If the previous disability or impairment, whether from compensable injury or otherwise, and the last injury together result in permanent total disability, the employer at the time of the last injury shall be liable only for the actual anatomical impairment resulting from the last injury considered alone and of itself.

Carl Ray Taylor, the employee, first sustained a work related back injury necessitating surgery in February 1983. He was assessed a 10% disability rating to the body as a whole upon discharge from care but suffered no wage loss. This injury happened while in another company's employ. In February 1989, the employee, then working for POM, reinjured his lower back requir-

ing surgery in the same location, resulting in an increased impairment rating of 25% to the body as a whole. The administrative law judge determined that the employee was entitled to receive permanent total disability, that POM was required to pay for the entire rating and expenses, and that the fund had no liability. The judge reasoned that second injury fund liability did not attach because the first injury was not shown to produce a loss of earning capacity.

POM appealed to the Full Commission which adopted the administrative law judge's findings and added that in order to invoke fund liability, it was necessary to show that the employee suffered a loss in wage earning capacity where the initial injury was work related, because an "impairment" is necessarily non-work related. Thus, the first injury had to be considered a "disability" and not an "impairment" since it occurred at work.

POM appealed the Full Commission's affirmance to the court of appeals, arguing that it should only be liable for the actual anatomical impairment resulting from the last injury alone and that the fund should be liable for the remainder from the first injury. The court of appeals reversed and remanded, finding that a preexisting impairment under the statute can be either work related or non-work related. We uphold the decision of the court of appeals.

On review, the fund argues that the court of appeals impermissibly expanded the definition of "impairment" to include prior work related conditions, which opens theoretical flood gates to Second Injury Fund liability. The fund argues that this allows the fact finder to manipulate the standard of proof required to prove the fund's liability, arbitrarily allowing a finding of wage loss or not since an injury can be work or non-work related to initiate fund liability. We disagree with this "slippery slope" argument.

This court clearly set out in *Mid-State Constr. Co. v. Second Injury Fund*, 295 Ark. 1, 746 S.W.2d 539 (1988), that defining "impairment" to necessarily include wage loss was wrong since it would undermine the purpose of the Second Injury Trust Fund to encourage the hiring of handicapped persons. In that case, the definition of "impairment" included only non-work

related conditions. Along that line of reasoning, the court of appeals has removed the restriction that impairment be limited to work related conditions in order to achieve the purpose of the Second Injury Fund.

The purpose of the fund is set out clearly in section 11-9-525:

(a)(1) The Second Injury Trust Fund established in this chapter is a special fund designed to insure that an employer employing a handicapped worker will not, in the event the worker suffers an injury on the job, be held liable for a greater disability or impairment than actually occurred while the worker was in his employment.

To remove the non-work versus work distinction in defining "impairment" is indeed an extension of previous law but is warranted. This is only an extension that logically follows the extension we made in *Mid-State*. *Mid-State* held that it is not necessary to demonstrate wage loss when impairment is involved. This holding is explained well in the majority opinion:

To hold otherwise would result in the unfounded and unintended situation that Second Injury Fund liability is denied in a case where a potential employee suffers from an impairment such as loss of one eye which would clearly be capable of supporting an award if the other elements of compensability were present, and the individual is subsequently hired and suffers a compensable injury, such as loss of the other eye, which combines with the former condition to produce the current disability status — complete blindness. Under the definition of impairment as set out in *Osage*, there is no Fund liability simply because the claimant was unable to demonstrate that the former condition had involved a loss of earning capacity.

. . . That result impermissibly distinguishes between two types of handicapped persons, contravenes the statutory scheme which makes employers liable only for the "degree or percentage of disability or impairment which would have resulted from the [recent compensable] injury had there been no preexisting disability or impairment," and defeats the purpose of the Fund to encourage the hiring of the handicapped.

*Id.*, 295 Ark. at 7-8, 746 S.W.2d at 542-43. The same logic must apply to impairment so that an injured group is not left without fund coverage. If the fund's argument that "impairment" means only non-work related impairment were accepted, then a claimant could never reach fund liability. To follow the fund's argument would discourage the very end the fund was designed to meet. Furthermore, the word "impairment" is used in section 11-9-525 in several differing contexts which cannot be read to define it in such a restricted manner. An impairment should be able to be considered work related, and we hold so.

The opinion of the court of appeals is affirmed.

GLAZE, J., concurs.