POM, INC., and Commercial Union Insurance *v.*
Carl Ray TAYLOR and Second Injury Fund

96-342                                    925 S.W.2d 790

Supreme Court of Arkansas
Opinion delivered July 15, 1996
[Petition for rehearing denied September 9, 1996.]

*Bailey, Trimble, Capps, Lowe, Sellars, & Thomas*, by: *Chester C. Lowe, Jr.*, for appellant.

*David L. Pake*, for appellees.

DAVID NEWBERN, Justice. This is another in a series of workers' compensation cases dealing with the proof necessary to establish Second Injury Fund liability. In 1989, Carl Ray Taylor suffered a compensable injury requiring surgery to the L-4 — L-5 area of his back while he was employed by the appellant, POM, Inc. He had suffered a work-related injury in the same area of his back in 1983. The second injury also required surgery. After his second injury he was assigned a disability rating of 25%.

Arkansas Code Ann. § 11-9-525(a)(1) and (2) (Repl. 1996) provides that the Second Injury Fund is established and designed to insure that an employer employing a handicapped worker will not, in the event such worker suffers an injury on the job, be held liable for a greater disability or impairment than actually occurred while

the worker was in the employer's employment. The Fund pays the worker the difference between the employer's liability and the balance of his disability or impairment which results from all disabilities or impairments combined. *Mid-State Const. Co. v. Second Injury Fund,* 295 Ark. 1, 746 S.W.2d 539 (1988).

Upon review of Mr. Taylor's second claim, the Workers' Compensation Commission held the Second Injury Fund not liable as Mr. Taylor had not suffered any wage loss from the first injury. The Court of Appeals, in an unpublished opinion, reversed the Commission's decision, *POM v. Taylor,* CA 92-1250, (Ark.App. December 1, 1993), and we affirmed in *Second Injury Trust Fund v. POM, Inc.,* 316 Ark. 796, 875 S.W.2d 832 (1994). We held the term "impairment" included results of work-related injuries as well as non-work-related ones. Accordingly, Mr. Taylor's case was remanded to the Commission.

After reconsidering the claim, the Commission once again found that the Second Injury Fund was not liable for any portion of Mr. Taylor's benefits. According to the Commission, Mr. Taylor's prior disability or impairment did not combine with the second compensable injury to produce his current disability status, and he was rendered permanently and totally disabled as a result of his second back injury and subsequent surgery. The Court of Appeals, in another unpublished opinion, agreed with the Commission. *POM v. Taylor,* CA 95-360 (Ark. App. February 28, 1996). We granted POM's petition for review.

This case focuses on the third element of the test enunciated in *Mid-State Const. Co. v. Second Injury Fund, supra.* The test, which is used to determine whether the Second Injury Fund must share liability for compensating an injured worker, was stated as follows:

> First, the employee must have suffered a compensable injury, at his present place of employment. Second, prior to that injury the employee must have had a permanent partial disability or impairment. Third, the disability or impairment must have combined with the recent compensable injury to produce the current disability status.

Our most recent decision on this issue is *Hawkins Const. Co. v. Maxell,* 325 Ark. 133, 924 S.W.2d 789 (1996), in which we held that the Commission's finding with respect to the third element of

the test was not supported by substantial evidence. In the *Hawkins Const. Co.* case, the unrebutted medical testimony indicated that the claimant's two injuries combined to produce his present impairment rating. The only evidence before the Commission contrary to the medical testimony was that which showed the claimant suffered no disability from his first injury that kept him from continuing to do the same sort of labor he had done previously. In finding that such evidence could not overcome the strong medical evidence, we stated, "[t]he fact that Mr. Maxell suffered no wage-loss disability after [his first] injury has *no necessary bearing* on the issue whether he suffered an impairment from that injury which contributes to his present injury." (Emphasis added.)

█ Our opinion in the *Hawkins Const. Co.* case, and certain cases decided by our Court of Appeals, have helped define how "wage-loss evidence" can be used in the *Mid-State* test. These cases suggest that where there is medical evidence that the two injuries combined to produce the current disability rating, contradictory evidence that the claimant was able to return to the same type of labor after his first injury is not determinative of the Second Injury Fund's liability. However, while the ability to work and lack of wage loss cannot be used alone to contradict the medical evidence, it may be used to corroborate it when combined with other evidence, *e.g.,* medical testimony that the claimant was cured after his first injury.

The correct approach is illustrated in *Arkansas Highway & Transp. Dept. v. McWilliams*, 41 Ark. App. 1, 846 S.W.2d 670 (1993). The Court of Appeals recited medical evidence that indicated the claimant's disability was attributable to his most recent injury, rather than a combination of injuries. In light of the medical evidence, the Court indicated that the claimant's ability to work was not the determining factor in the Commission's decision against the liability of the Second Injury Fund.

> The Commission did refer in its opinion to the claimant's physical abilities and his lack of physical problems subsequent to this prior back impairment but before his compensable injury. However, we cannot . conclude that the Commission made the lack of prior "disability" a determining factor, and we do not think that the extent of one's physical abilities prior to a compensable injury is necessarily irrelevant in every case, or in this case, to the decision whether the third prong of the test has been met.

In *Bussell v. Georgia Pacific Corporation*, 48 Ark.App. 131, 891 S.W.2d 75 (1995), the Court of Appeals affirmed when the Commission considered the claimant's ability to work, but only in light of other evidence that indicated that the second injury alone was responsible for the disability. Specifically, the Commission was influenced by the severity of the second accident and the apparent success of the treatments for the first injury.

In this case, we find substantial evidence to support the Commission's decision based on the medical evidence that was introduced, as well as Mr. Taylor's ability to work, which tends to corroborate that evidence. In the *Hawkins Const. Co.* case there was no evidence other than the ability to return to work and absence of wage loss to show the lack of contribution of the first injury to the ultimate condition of the worker. On the other hand, there was strong medical testimony showing that the first injury created a physical condition which contributed to the ultimate disability. In this case, there is medical evidence that Mr. Taylor obtained an excellent result from his first surgery and that the original assessment of 10% disability to the body as a whole was only *pro forma*. It was permissible for the Workers' Compensation Commission to consider Mr. Taylor's lack of wage-loss disability as some corroboration of that medical testimony.

The first surgery was performed by a Dr. Christian. When inquiry was made by the insurance company which handled Mr. Taylor's first claim, the response came from Dr. Thompson, who had been Dr. Christian's partner. In the letter, Dr. Thompson noted, "I have never seen Mr. Taylor, as far as my records indicate." The doctor noted that a disability rating was not previously assigned because, when Dr. Christian released Mr. Taylor, no claim had been filed. Dr. Thompson interpreted Mr. Taylor's records and assigned a 10% disability rating. The doctor stated his rationale for choosing a 10% rating as follows:

> It has been my practice throughout the years to consider a successfully operated ruptured disc results in a 10% disability of the body as a whole, based on the fact that the patient no longer has a good shock absorber in his back as a result of the condition which was treated (not because of the surgery) and that as a result over the years, he will get some narrowing of the disc space with excess pressure on the facets, so he may get into trouble in the future. It was on this

basis that I have felt justified in recommending a 10% disability rating on a person, who for all practical purposes is "cured."

Dr. Thompson also wrote that Mr. Taylor's records indicate that "he got an excellent result" from the surgery and "has been released to full activity." Dr. Haines, the surgeon who performed the second surgery, stated in a postoperative report that Mr. Taylor had previously undergone surgery in the same area of his back, and that "Carl had done well, after surgery, until his time of reinjury."

█ To be sure, Dr. Thompson's letter indicates that patients who suffer injuries similar to Mr. Taylor's initial one typically lose the "shock absorber" between their discs and for that reason are likely to have trouble in the future. That evidence, however, served only to raise a factual issue which was for the Commission to decide. *Buckeye Cotton Oil* v. *McCoy*, 272 Ark. 272, 613 S.W.2d 590 (1981). When there is any substantial evidence to support the Commission's decision, we affirm. *Kuhn* v. *Majestic Hotel*, 324 Ark 21, 918 S.W.2d 158 (1996). In our view, notwithstanding Dr. Thompson's general remarks, the evidence from Mr. Taylor's records that he was for all practical purposes "cured" after his first surgery combined with the fact that he returned to work without limitations for some six years was substantial evidence from which the Workers' Compensation Commission could have concluded the Second Injury Fund was not responsible for any part of Mr. Taylor's second claim.

Affirmed.

DUDLEY, J., not participating.

JESSON, C.J., and GLAZE, J., dissent.

TOM GLAZE, Justice, dissenting. I respectfully dissent. The court of appeals' unpublished opinion on review here misstates what must be shown under controlling case law to establish Second Injury Fund liability. *See Mid-State Construction* v. *Second Injury Fund*, 295 Ark. 1, 746 S.W.2d 539 (1988); *Hawkins Const. Co.* v. *Maxell*, 325 Ark. 133, 924 S.W.2d 789 (1996). That unpublished opinion concludes as follows:

Most importantly, there was no proof that Taylor's present disability status would not have resulted solely as the result of his present compensable injury, considered alone and of

itself, i.e., that Taylor would *not* have been totally disabled as a result of this injury even if he had *not* suffered an earlier impairment. (Emphasis added.)

As this court has held in *Mid-State* and *Hawkins,* to establish Second Injury Fund liability, the employee (1) must have suffered a compensable injury at his present job, (2) must have had a prior permanent partial disability or impairment and (3) that disability or impairment must have combined with the recent compensable injury to produce the current disability status. Quite clearly, the proof required under the third prong of the *Mid-State* test is different than proving the negative and differently worded burden of proof set out in the court of appeals decision above. In my view, that misstatement persists and has caused enough confusion for this court to have reached the wrong result.

The record reflects that Dr. S. B. Thompson gave Taylor a 10% impairment rating following Taylor's first injury. In doing so, Thompson stated Taylor no longer had a good shock absorber in his back and that, over the years, Taylor would have narrowing of the disc space with excess pressure on the facets, so he may get into trouble in the future. Dr. Lynn Haines, who performed surgery on Taylor after his second injury, said that he had received information relating to Taylor's first injury and had concluded he would not have given Taylor a blanket release to return to work. Nonetheless, Haines stated that, subsequent to Taylor's second injury, there were significant neurologic deficits, along with persistent pain and discomfort, which he felt *would bring about an alteration in the patient's limitations.* And finally, Jim Spragins, a vocational expert, expressed his opinion that as a result of *both* injuries and resulting surgeries, Taylor was essentially unemployable.

As is readily obvious from the above expert testimony, proof very clearly was presented to show Taylor's preexisting impairment (10%) and subsequent injury combined to produce his current permanent disability. Haines and Spragins, together, established that Taylor's earlier injury limitations had been altered by the second injury so as to make Taylor unemployable.

The majority opinion suggests the foregoing evidence is insignificant because "there is medical evidence Mr. Taylor was cured after his first injury and that the original assessment of 10% disability to the body as a whole was only *pro forma.*" I suggest the majority

has improperly weighed or taken out of context, Dr. Thompson's testimony to reach the *pro forma* conclusion. No such evidence was presented. Thompson did suggest that Taylor was cured for all practical purposes after the first injury, but in making that comment added (1) Taylor no longer had a good shock absorber in his back, (2) Taylor would get narrowing of the disc space with pressure on the facets and (3) he may get into trouble in the future. In my view, a fair-minded person could not read Thompson's evaluation of Taylor and conclude Taylor had not been impaired by his first injury and surgery. Yet, the majority uses Thompson's remarks as substantial evidence to affirm the Commission's decision.

As Thompson indicated, Taylor was predisposed to having trouble in the future and Taylor did. And *that second injury* (no surprise to anyone) *recurred at the same L-4 -5 level as before.* I believe the majority's reliance on Thompson's "cured" remark is out of context and is in no way substantial evidence to support the Commission's decision to deny Second Injury Fund liability. Therefore, I would reverse the court of appeals' decision.

JESSON, C.J., joins this dissent.