CITY of FOUKE *v.* Patsy BUTTRUM

CA 97-474                                   956 S.W.2d 193

Court of Appeals of Arkansas
Division I
Opinion delivered December 3, 1997
[Petition for rehearing denied January 14, 1998.]

*J. Chris Bradley*, for appellant.

*Craig L. Henry*, for appellee.

JUDITH ROGERS, Judge. This is an appeal from the Workers' Compensation Commission's decision finding that Act 796 of 1993 did not apply to this case and that appellee proved by a preponderance of the credible evidence that she sustained a compensable injury and was entitled to temporary total disability benefits from December 1, 1994, through a date yet to be determined. On appeal, appellant argues that the Commission erred in determining that Act 796 of 1993 did not apply and that there was no substantial evidence to support the Commission's decision. We disagree and affirm.

First, appellant argues that the Commission erred in determining that appellee's claim was not governed by Act 796 of 1993. Appellant contends that appellee did not sustain her injury until after Act 796 was in effect because she did not suffer a loss in earnings until December 1, 1994. Appellant cites *Hall's Cleaners v. Wortham*, 38 Ark. App. 86, 829 S.W.2d 424 (1992), in support of its proposition. We find appellant's reliance on *Hall's Cleaners* misplaced. In *Hall's Cleaners*, we said that, for purposes of the running of the statute of limitations, the statute does not begin to run until the true extent of the injury manifests and causes an incapacity to earn the wages that the employee was receiving at the time of the accident. The issue in that case involved only the question of when does an injury become *compensable* so as to

activate the running of the statute of limitations. In this case, on the other hand, we are determining, as a prerequisite, which act governs this particular claim. We are not deciding an issue that would already be governed by one of the acts, i.e., when the injury became compensable for statute of limitations purposes.

In our case of *Atkins Nursing Home v. Gray*, 54 Ark. App. 125, 923 S.W.2d 897 (1996), we made it clear that the provisions of Act 796 of 1993 shall apply *only to injuries that occur* after July 1, 1993. There is no indication in Act 796 or our opinion in *Atkins Nursing Home* that "injury" means compensable injury for purposes of when Act 796 becomes effective. In *Atkins*, we affirmed the Commission's finding that the claimant suffered a recurrence on August 20, 1993. If we had determined that the claimant had not suffered a recurrence, but a new injury, then Act 796 would have been applicable to the facts of that case.

Here, the Commission determined that:

> [w]here a claimant demonstrates the manifestation of an obvious and unresolved physical injury prior to the effective date of Act 796, which we find below that claimant in the instant case has done, the same logic as that relied on in *Atkins* ought to be applicable (regardless of whether a claim was previously filed). With regard to relevant statutory provisions, Act 796 itself provides that it "shall apply only to those injuries which occur after July 1, 1993"(See "effective dates" section preceding Ark. Code Ann. § 11-9-101 (Repl. 1996). There is no accompanying provision stating or implying that an "injury", for purposes of determining whether the Act applies, is deemed to have occurred only upon a loss of wages. Nor can we impose such a rule in light of our statutory duty to strictly construe the new Act.

We cannot say that the Commission erred in determining that Act 796 of 1993 did not apply to this case because it is uncontradicted that appellee's injury was objectively confirmed as carpal tunnel syndrome on June 7, 1993. Thus, the date that appellee's injury occurred was before Act 796 became effective. Based on our resolution of this issue, we need not address appellant's remaining arguments that involve Act 796 of 1993.

Appellant does argue under the old act, however, that there is no substantial evidence to support the Commission's finding that appellee's injury arose out of and in the course of her employment. Appellant contends that there is no substantial evidence to support a finding that appellee's inability to work after November 30, 1994, was related to her employment with appellant. Also, appellant argues that appellee was not entitled to temporary total disability benefits.

■ We review decisions of the Workers' Compensation Commission to see if they are supported by substantial evidence. *Kildow v. Baldwin Piano & Organ*, 58 Ark. App. 194, 948 S.W.2d 100 (1997). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997). The Commission's decision will be affirmed unless fair-minded persons presented with the same facts could not have arrived at the conclusion reached by the Commission. *Id.*

The record reveals that appellee worked for eleven and a half years, read water meters four to five hours a day, and wrote, in duplicate by hand, 250 to 300 water bills and receipts for each payment. During the last two years of her employment, appellee used a computer to enter all of the data. Appellee testified that she began experiencing pain in her hands in 1988, and that she mentioned it to at least two people, one being her supervisor at work. Appellee's condition grew worse. Mayor Jane Roberts, appellee's supervisor, testified that she saw appellee's hands and said that they were "swelled, bad, and I said, Pat, what is that, and what caused that, and she it [sic] was carpal. . .tunnel syndrome." Appellee testified that her hands hurt so badly that she thought she had suffered a stroke. She also said that her right hand was completely "dead" and had no feeling and that her left hand ached at night.

As early as July 20, 1992, Dr. Sam Brown believed that appellee was suffering from carpal tunnel syndrome. He prescribed medication and a splint, and he noted that a conduction test could be required in the future. Subsequently, Dr. Brown diagnosed appellee with carpal tunnel syndrome on June 7, 1993. He noted that the result of her NCV was positive for carpal tunnel, and it

was his impression that she had bilateral carpal tunnel syndrome. He referred appellee to Dr. Richard Hilborn. On June 18, 1993, appellee saw Dr. Hilborn, who found that appellee was a candidate for bilateral carpal tunnel release. Dr. Charles Hollingsworth saw appellee and noted that appellee did have bilateral carpal tunnel syndrome and that she had "irreversible damage and permanent sensory loss." He related appellee's carpal tunnel to her job duties with the city. He said, "I certainly feel that this patient's symptoms arose during her employment at Fouke City Hall and her job duties appear to have been the major instigating source of her problems." Dr. Hilborn also noted that, based on appellee's work history, it was certainly possible that her present condition was related to her former job.

Drs. Hilborn and Hollingsworth both recommended that appellee undergo corrective surgery. In its decision, the Commission noted that surgery had yet to be performed because of appellant had controverted appellee's claim. The Commission, consequently, found appellee temporarily totally disabled based on appellee's credible testimony that she could work if it were not for her hands, and also recognizing the need to protect appellee from increased damage to her condition, which Dr. Hollingsworth opined was already "irreversible." Based on the medical evidence, which indicates severe carpal tunnel syndrome related to appellee's work, and appellee's testimony that she had no feeling in her right hand and that she cannot work, we cannot say that the Commission's decision is not supported by substantial evidence.

Affirmed.

ROBBINS, C.J., and NEAL, J., agree.