SECOND INJURY FUND *v.* Ronnie FURMAN

CA 97–906                                961 S.W.2d 787

Court of Appeals of Arkansas
Division II
Opinion delivered February 11, 1998

*David L. Pake*, for appellant.

*Hardin, Jesson, Dawson & Terry*, by: *J. Rodney Mills* and *Robert T. Dawson*, for appellee Simmons Industries.

JOHN B. ROBBINS, Chief Judge. Appellee Ronnie Furman sustained a work-related injury to his back while working for Rymer Foods in July 1992. As a result of this injury, Mr. Furman underwent surgery and Rymer paid benefits in accordance with a 10% anatomical impairment rating. Mr. Furman returned to work in the same position that he held prior to the injury, and continued to do so after Rymer was bought by Simmons Industries on January 1, 1994. On May 18, 1994, Mr. Furman was working for Simmons and sustained a second back injury. After again undergoing surgery, Mr. Furman returned to work on a part-time basis for about a month, but has not worked since January 1995. As a result of the second back injury, Mr. Furman was assigned an additional 2% anatomical rating, for which Simmons has compensated him.

Mr. Furman filed a claim with the Workers' Compensation Commission, contending that his injuries had rendered him permanently and totally disabled. A hearing was held to determine, among other things, the extent of any responsibility of appellant Second Injury Fund. After the hearing, the Commission found that the original back injury resulted in a 5% wage loss. The Commission also found that, after the second injury, Mr. Furman was not totally disabled but rather suffered an additional wage loss of 18%. The Commission then ordered the Second Injury Fund to compensate Mr. Furman for 18% wage loss. Second Injury Fund now appeals this award.

For reversal, the appellant raises seven arguments. It first contends that the Commission erred in characterizing Mr. Furman's first back injury as an "impairment" rather than a "disability." Next, Second Injury Fund argues that the Commission erred in concluding that Mr. Furman's first injury resulted in a 5% wage loss. The appellant's third and fourth arguments are that Mr. Furman failed to establish that the two injuries combined to produce the resulting disability and that substantial evidence does not support the finding that the second injury would not have caused

the entire disability alone and of itself. The appellant also argues that the Commission erred in finding that Mr. Furman did not waive vocational rehabilitation and further asserts that the Commission misquoted Ark. Code Ann. § 11-9-505(b)(3) (Repl. 1996) with regard to an employee's waiver of vocational rehabilitation. Finally, Second Injury Fund contends that the Commission erred as a matter of law in finding that the Fund could pay for vocational rehabilitation benefits. We find no error and affirm.

■ When reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if supported by substantial evidence. *Welch's Laundry & Cleaners v. Clark*, 38 Ark. App. 223, 832 S.W.2d 283 (1992). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *City of Fort Smith v. Brooks*, 40 Ark. App. 120, 842 S.W.2d 463 (1992). A decision by the Workers' Compensation Commission should not be reversed unless it is clear that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Silvicraft, Inc. v. Lambert*, 10 Ark. App. 28, 661 S.W.2d 403 (1983).

At the hearing before the Commission, Mr. Furman testified on his own behalf. He stated that, between 1990 and the date of his second injury, he had been employed as a production manager. His duties included supervising and training employees as well as helping on the production line when needed. Mr. Furman indicated that on some occasions he was required to lift as much as seventy pounds.

In July 1992, Mr. Furman suffered a back injury that resulted in surgery performed by Dr. Michael Standefer in January 1993. Mr. Furman returned to his supervisory position in March 1993 and was able to earn the same or more money than he had been making prior to the injury. However, he testified that as a result of the first injury, bending over became more strenuous and he was no longer able to lift seventy pounds.

On May 18, 1994, Mr. Furman "was carrying a tray of chicken and stumbled over a tub stand and twisted and hurt [his]

back again." This injury resulted in a subsequent surgery, and according to Mr. Furman, he has been unable to return to full duty since that time. He testified that he now has almost constant pain in his back and that he can no longer perform his job because of the standing and walking requirements. He admitted that he might be able to perform a job involving minimal physical demands, but stated that he has applied for these types of jobs with no success. Mr. Furman testified that he checked with Arkansas Rehabilitation Services about vocational training, but that "I did not get a follow up on my inquiry."

The pertinent medical evidence in this case was provided in large part by the medical reports of Dr. Standefer. After the initial surgery, Dr. Standefer released Mr. Furman to work with the requirements that he lift no more than twenty-five pounds and avoid repeated bending. After the second injury, Dr. Standefer performed a myelogram and CT scan that provided findings consistent with a herniated disc, and he determined that another surgery would be necessary. Several months later, Dr. Standefer assigned an additional 2% impairment rating that was attributed to the second injury, and he gave the following opinion with regard to Mr. Furman's employment possibilities:

> In the future it will be important for him to avoid heavy lifting and repeated bending as in the past. I am inclined to think that resumption of his previous occupation will not be feasible. He should investigate alternative employment opportunities or vocational/technological school or resumption of higher education in the form of college.

Second Injury Fund's first assignment of error is that the Commission erred in finding that Mr. Furman's first injury was an "impairment" rather than a "disability." It points out that, under Act 796 of 1993, the legislature has mandated strict construction of our workers' compensation laws. The Fund then submits that, under the new Act, an injury occurring on the job cannot result in an "impairment," but rather must be categorized as a "disability" that results in wage loss. Hence, argues the Fund, Mr. Furman did not suffer an impairment when he sustained a compensable back injury while working in July 1992.

■ The appellant's first argument is without merit. The new Workers' Compensation Act did not change the following guidelines for Second Injury Fund liability, which are now codified at Ark. Code Ann. § 11-9-525(3) and (4) (Repl. 1996):

> (3) If any employee who has a permanent partial disability or impairment, whether from compensable injury or otherwise, receives a subsequent compensable injury resulting in additional permanent partial disability or impairment so that the degree or percentage of disability or impairment caused by the combined disabilities or impairments is greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of combined disabilities or impairments, then the employer at the time of the last injury shall be liable only for the degree or percentage of disability or impairment which would have resulted from the last injury had there been no preexisting disability or impairment. ,

> (4) After the compensation liability of the employer for the last injury, considered alone, which shall be no greater than the actual anatomical impairment resulting from the last injury, has been determined by an administrative law judge or the Workers' Compensation Commission, the degree or percentage of employee's disability that is attributable to all injuries or conditions existing at the time the last injury was sustained shall then be determined by the administrative law judge or the commission, and the degree or percentage of disability or impairment which existed prior to the last injury plus the disability or impairment resulting from the combined disability shall be determined, and compensation for that balance, if any, shall be paid out of the fund provided for in § 11-9-301.

Pursuant to the above provisions, the Second Injury Fund may be subjected to liability if a claimant suffers from a permanent impairment, whether or not the impairment is the result of a compensable injury. In *Second Injury Trust Fund v. POM, Inc.*, 316 Ark. 796, 875 S.W.2d 832 (1994), a case decided under prior law, our supreme court held that a preexisting impairment can either be work related or non-work related, and need not include wage loss. In that case, Second Injury Fund argued, as it does here, that in order to invoke fund liability, it is necessary to show that the employee suffered a loss in wage-earning capacity where the initial

injury was work related, because "impairment" is necessarily non-work related. However, this argument was rejected.

In the instant case the appellant contends that, as a result of the new legislation, the result in *Second Injury Trust Fund v. POM, Inc., supra*, is no longer controlling. We disagree. Although the new Act is to be construed strictly, none of its provisions give rise to a different result in the disposition of this issue. Mr. Furman suffered a 10% anatomical impairment as a result of his first injury, and his employer compensated him for this impairment. It is immaterial whether or not the impairment resulted in any wage-loss disability. In either case, the Commission was correct in concluding that the impairment gave rise to potential Second Injury Fund liability. This would have been the proper ruling under prior law, and it continues to be the proper ruling under the new Act.

The appellant next contends that, because Mr. Furman did not suffer an impairment as the result of his first injury, any liability on its part would have to be based on a finding that the first injury caused a disability. It argues further that the Commission erred in concluding that Mr. Furman suffered a 5% wage-loss disability because he returned to work at the same or greater wages than he had been earning prior to the first injury. The Fund argues that because Mr. Furman suffered no initial impairment or disability, it could not be held liable under the relevant provisions of Ark. Code Ann. § 11-9-525 (Repl. 1996).

We agree with appellant that the Commission erred in assigning a 5% wage-loss disability to the first injury. Mr. Furman had returned to work at the same or greater wage level than he had been earning prior to the injury. However, such error is harmless because of our holding that it is immaterial whether the first injury was a work-related impairment or involved a wage-loss disability. The permanent impairment caused by the first injury was sufficient to trigger Second Injury Fund liability after the second injury suffered by Mr. Furman.

The appellant's third and fourth arguments are interrelated. It asserts that the Commission erred in finding that the two injuries combined to cause Mr. Furman's disability, and that the evi-

dence showed that his disability was no greater than that which would have been caused by the second injury alone. The Fund points out that, after the first injury, Mr. Furman returned to the same job and was able to work full time. He was also able to continue his hobbies, including golf and bowling. It was not until after the second injury that he was forced to quit his employment and discontinue his hobbies. Based on this evidence, Second Injury Fund submits that we can only reasonably conclude that the second injury was by itself responsible for Mr. Furman's resulting disability.

█ We find substantial evidence to support the Commission's finding that the two injuries combined to produce Mr. Furman's disability. An MRI conducted after the initial injury revealed disk bulges along with a herniated disk, and these conditions required surgery. After returning to work, Mr. Furman worked at the same or greater wages but was given restrictions on his lifting and bending. The second injury occurred in precisely the same L5-S1, left location, and he again underwent surgery. After the second surgery, Dr. Standefer assigned a 12% anatomical impairment rating, which was based on Mr. Furman's "two previous operations." This represents only a 2% increase from the 10% anatomical rating that had been assigned as a result of the first injury alone. We find that there is substantial evidence to support the Commission's determination that the two injuries combined to cause Mr. Furman's disability, and that his disability was greater than that which would have been caused by the second injury alone.

Second Injury Fund next contends that the Commission erred in finding that Mr. Furman did not waive vocational rehabilitation, and that it misquoted Ark. Code Ann. § 11-9-505(b)(3) (Repl. 1996), which provides:

> (3) The employee shall not be required to enter any program of vocational rehabilitation against his consent; however, no employee who waives rehabilitation or refuses to participate in or cooperate for reasonable cause with either an offered program of rehabilitation or job placement assistance shall be entitled to permanent partial disability benefits in excess of the percentage of

permanent physical impairment established by objective physical findings.

The appellant essentially contends that Mr. Furman had a duty to pursue rehabilitation, and that he failed to do so. It asserts that, at the time of the hearing, Mr. Furman was not working and had no plans to seek employment in the future. Nor did he file with the Commission any plan for rehabilitation. The appellant submits that this constituted a waiver of any right to rehabilitation and thus relieves it of any liability pursuant to the above statutory provision. The Fund notes that, in its opinion, the Commission misquoted the above provision when it stated "no employee who waives *an offer of* rehabilitation" shall be entitled to disability benefits in excess of his permanent impairment (emphasis added). The appellant argues that the Commission erroneously concluded that it was the responsibility of the Fund to offer rehabilitation, rather than the responsibility of Mr. Furman to seek it.

■ Notwithstanding the Commission's failure to accurately quote the pertinent statute, we find no error in its decision that Mr. Furman has not waived rehabilitation and is entitled to disability benefits. We acknowledge that Ark. Code Ann. § 11-9-505(b)(4) (Repl. 1996) provides that, if a claimant elects to apply for rehabilitation at the expense of his employer, he must file such election with the Commission prior to a determination of disability benefits. However, this provision does not stand for the proposition that every claimant must formally file for rehabilitation with the Commission or waive entitlement to disability benefits. In the instant case, there was no evidence that either the appellant or Mr. Furman's employer at any time suggested a plan of rehabilitation. However, in answering his interrogatories, Mr. Furman affirmatively indicated that he wanted to pursue rehabilitation and did not waive his right to the same. Then, at the hearing, he presented a plan for attending Westark Community College to pursue a degree in hotel and restaurant management, and he provided a list of the expected finances to fund such a program. On these facts, we find no error in the Commission's refusal to deny disability benefits based on the appellant's contention that Mr. Furman waived rehabilitation. In *Second Injury Fund v. Robison*, 22 Ark. App. 157, 737 S.W.2d 162 (1987), we held that the Com-

mission is not required to consider a claimant's failure to request rehabilitation in determining the degree of his disability.

The appellant's remaining argument is that the Commission erred in finding that the fund could pay for vocational rehabilitation benefits. It cites *Second Injury Fund v. Robison, supra.* In that case, we indicated that if an employee's request for a rehabilitation program is granted, the employer is responsible for providing the vocational rehabilitation. The appellant submits that this fact has not been changed by any provision in the new Act.

We find the appellant's final point to be moot, because the Fund was not ordered to pay for any rehabilitation program. Its liability was limited to a wage-loss disability award. Therefore, the Commission's mention of potential Fund liability as to a hypothetical rehabilitation program was of no consequence.

Affirmed.

BIRD and GRIFFEN, JJ., agree.