SECOND INJURY FUND *v.* Billy STEPHENS, Trailmobile, Inc., and Home Indemnity Company

CA 97-1528 970 S.W.2d 331

Court of Appeals of Arkansas
Division II
Opinion delivered June 24, 1998

*Terry Pence*, for appellant.

*Curtis L. Nebben*, for appellees.

*Snellgrove, Laser, Langley, Lovett, & Culpepper*, by: *Todd Williams*, for appellee Billy Stephens.

JOHN F. STROUD, JR., Judge. The Second Injury Fund appeals a decision of the Workers' Compensation Commission holding it liable for a twenty percent wage-loss disability awarded to Billy Stephens, a thirty-four-year-old welder with an eighth-grade education. We affirm the Commission's decision.

The parties do not dispute the facts in this case. Mr. Stephens was assigned a ten percent permanent physical impairment rating as a result of a 1987 compensable back injury and two 1988 surgeries related to the injury. In 1993 he began working for Trailmobile, Inc., where he suffered another compensable back injury in April 1995 while pulling a coupler section onto a welding table. This injury resulted in surgery the next month. Trailmobile and its insurance carrier, Home Indemnity Company, accepted and paid a two percent permanent impairment rating following the 1995 surgery. Mr. Stephens returned to work for Trailmobile in a light-duty capacity and continued working until January 1996, when he sustained a noncompensable back injury that also required surgery.

A hearing before the administrative law judge was held in October 1996 on the issues of wage-loss benefits and Second Injury Fund liability. Mr. Stephens testified that after his 1995

return to work he had difficulty with the physical demands of various job assignments. The law judge awarded him wage-loss benefits in the amount of twenty percent, and apportioned the sum to be paid equally by Trailmobile and the Second Injury Fund. The Workers' Compensation Commission reversed the decision regarding apportionment, finding that all wage loss should be borne by the Second Injury Fund. In doing so, the Commission rejected the Fund's argument that Mr. Stephens had failed to prove that the major cause of his wage-loss disability was his last compensable injury. On appeal, the Second Injury Fund does not challenge the finding that Mr. Stephens's wage-earning capacity has been reduced by twenty percent. It contends, however, that the wage-loss disability award is contrary to our workers' compensation statutes.

██ ██ The requirements that must be met in order for the Second Injury Fund to have liability are as follows:

> First, the employee must have suffered a compensable injury at his present place of employment. Second, prior to that injury the employee must have had a permanent partial *disability* or *impairment*. Third, the disability or impairment must have combined with the recent compensable injury to produce the current disability status.

*Mid-State Construction Co. v. Second Injury Fund*, 295 Ark. 1, 5, 746 S.W.2d 539, 541 (1988). In *Second Injury Fund v. Furman*, 60 Ark. App. 237, 242, 961 S.W.2d 787, 790 (1998), we addressed the Fund's liability under Act 796 of 1993, which has mandated strict construction of our workers' compensation laws. We stated that the new Workers' Compensation Act did not change the following guidelines for Second Injury Fund liability, now codified as Ark. Code Ann. § 11-9-525(b)(3) and (4) (Repl. 1996):

> (3) If any employee who has a permanent partial disability or impairment, whether from compensable injury or otherwise, receives a subsequent compensable injury resulting in additional permanent partial disability or impairment so that the degree or percentage of disability or impairment caused by the combined disabilities or impairments is greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of

combined disabilities or impairments, then the employer at the time of the last injury shall be liable only for the degree or percentage of disability or impairment which would have resulted from the last injury had there been no preexisting disability or impairment.

(4) After the compensation liability of the employer for the last injury, considered alone, which shall be no greater than the actual anatomical impairment resulting from the last injury, has been determined by an administrative law judge or the Workers' Compensation Commission, the degree or percentage of employee's disability that is attributable to all injuries or conditions existing at the time the last injury was sustained shall then be determined by the administrative law judge or the commission, and the degree or percentage of disability or impairment which existed prior to the last injury plus the disability or impairment resulting from the combined disability shall be determined, and compensation for that balance, if any, shall be paid out of the fund provided for in § 11-9-301.

The Second Injury Fund raises three points regarding the twenty percent wage-loss disability award. First, it alleges that the Commission erred in finding that Mr. Stephens's compensable injury and two percent impairment rating was the "major cause" of his disability because it failed to consider his prior and subsequent injuries. Second, it contends that under the proposed "proper analysis" of the first point, the Commission's finding that the 1995 compensable injury was the major cause of the disability is not supported by substantial evidence. Third, it contends that the Commission erred in awarding permanent disability benefits because Mr. Stephens waived his right to pursue rehabilitation benefits.

■ When reviewing a decision of the Workers' Compensation Commission, we must decide whether it is supported by substantial evidence. *City of Fouke v. Buttrum*, 59 Ark. App. 219, 956 S.W.2d 193 (1997). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *Id.* The Commission's decision will be affirmed unless fair-minded persons presented with the same facts could not have arrived at the conclusion reached by the Commission. *Id.*

*I. Whether the Commission erred in not considering appellee's prior and subsequent injuries in finding that appellee's compensable injury and two percent impairment rating was the "major cause" of his wage-loss disability.*

 The Second Injury Fund relies upon Arkansas Code Annotated section 11-9-102 and *Farmland Ins. Co. v. DuBois*, 54 Ark. App. 141, 923 S.W.2d 883 (1996), where we stated that a claimant seeking permanent disability benefits must prove that the compensable injury is the major cause of his permanent disability. The argument is without merit: section 11-9-102 does not refer to a disability or impairment resulting from the combination of a compensable work injury and a previous permanent disability or impairment, nor was *DuBois* a second injury case. We will not extend the statute or caselaw to require a claimant to prove that his compensable injury is the major cause of disability or impairment status that resulted from combining his last compensable injury and a prior disability or impairment.

Arkansas Code Annotated section 11-9-102 (Supp. 1997) reads in pertinent part as follows:

(5)(F) *Benefits.*

(i) When an employee is determined to have a compensable injury, the employee is entitled to medical and temporary disability as provided by this chapter.

(ii)(a) Permanent benefits shall be awarded only upon a determination that the compensable injury was the major cause of the disability or impairment.

(b) If any compensable injury combines with a preexisting disease or condition or the natural process of aging to cause or prolong disability or a need for treatment, permanent benefits shall be payable for the resultant condition only if the compensable injury is the major cause of the permanent disability or need for treatment.

(iii) Under this subdivision (5)(F), benefits shall not be payable for a condition which results from a nonwork-related independent intervening cause following a compensable injury which causes or prolongs disability or a need for treatment. A

nonwork-related independent intervening cause does not require negligence or recklessness on the part of a claimant.

. . . .

14(A) "Major cause" means more than fifty percent (50%) of the cause.

(B) A finding of major cause shall be established according to the preponderance of the evidence;

The Second Injury Fund contends that section 11-9-102(5)(F)(ii) required Mr. Stephens to prove that his 1995 injury was the major cause of his twenty percent wage-loss disability. Pointing to certain testimony and medical records from 1988 through 1996, and characterizing the 1996 injury and surgery as an independent intervening cause, it argues that the Commission erred in ignoring prior and subsequent factors that contributed to the disability.

The Commission rejected this argument with the following reasoning:

> We are not persuaded by the Second Injury Fund argument that claimant has failed to prove by a preponderance of the evidence that the major cause of claimant's wage loss disability is his 1995 injury. Arkansas Code Ann. § 11-9-102(5)(F)(ii)(a) states "permanent benefits shall be awarded only upon a determination that the compensable injury was the major cause of the disability or impairment." In this case, the record clearly shows that claimant sustained a two percent (2%) physical impairment as a result of the 1995 compensable injury. Thus, the major cause requirement has been satisfied and permanent partial disability benefits have been paid for this physical impairment.

We, too, reject the argument that the statute required claimant to prove that his compensable 1995 injury was the major cause of his wage-loss disability. Rather, the statute required only that he prove that his 1995 compensable injury was the major cause of the two percent impairment rating.

Dr. Kenneth Tonymon, a neurosurgeon who performed the first surgery in 1988 and the 1995 surgery, testified that Mr. Stephens's permanent partial impairment rating for the first two surgeries was ten percent. He stated that an additional two percent rating is indicated for an operation at the site of a

previous one, and that the May 1995 surgery was Mr. Stephens's second at the L4–5 level. He stated that Mr. Stephens's on-the-job injury at Trailmobile was the major cause of the surgery, specifying that a soft piece of ruptured disc material was "not what I would consider a chronic herniation, so I feel like the history was certainly compatible . . . . That surgery was the sole cause of the additional [two percent] rating I gave." Clearly, the "major cause" requirement of Arkansas Code Annotated section 11-9-102(5)(F) was satisfied by Dr. Tonymon's testimony that the 1995 injury necessitated performance of a surgery and that this surgery, at the site of a previous one, was the reason for the two percent impairment rating.

■ Our review of the evidence also shows that *Mid-State*'s three-pronged test has been met. There was evidence before the Commission first, that Mr. Stephens sustained a compensable injury in 1995 while employed by Trailmobile; second, that he had a prior ten percent impairment rating resulting from his 1987 compensable injury and related surgeries in 1988; and third, that the 1988 impairment combined with the 1995 injury and resulting surgery to produce his twenty percent wage-loss disability.

*II. Whether the Commission's finding that the 1995 compensable injury is the major cause of the disability or impairment is supported by substantial evidence.*

■ ■ The Second Injury Fund argues that under the "proper analysis" proposed in the first point, less than fifty percent of the claimant's disability or impairment is attributable to the 1995 compensable injury, and that injuries and surgeries before and after the 1995 injury clearly created as much as, or more, disability or impairment than did the 1995 injury. The argument is meritless. In our discussion under Point I, we rejected reading *Farmland Ins. Co. v. DuBois* to create a new analysis of major cause in Second Injury Fund cases. Again, we will not expand Arkansas Code Annotated section 11-9-102(5)(F)(ii)(a) (Supp. 1997) to say something that it does not purport to say.

We note the Fund's final argument under this point:

> In finding Appellee's 1995 injury is the major cause of his disability, for the purpose of awarding permanent benefits, but is not

the major cause of his disability, for the purpose of finding Second Injury Fund liability, reveals completely diametric conclusions arising from the same set of facts within the body of the same opinion. [*Sic.*] Application of the proper construction of § 11-9-102(F)(5)(ii) would prevent such a result in this case.

We reject this argument. If the Commission cannot find that an injury is the major cause of a claimant's disability and still find the Second Injury Fund liable for additional benefits, there can be no scenario in which the Second Injury Fund is liable.

*III. Whether the Commission erred in awarding permanent disability benefits because Mr. Stephens waived his right to pursue rehabilitation benefits.*

The Second Injury Fund contends that because Mr. Stephens did not request a program of rehabilitation or pursue one on his own, he is not entitled to an award of permanent disability benefits in excess of two percent. This argument fails.

The Fund relies upon Arkansas Code Annotated section 11-9-505(b) (Repl. 1996), which addresses rehabilitation. The statute provides in part:

(b)(3) [N]o employee who waives rehabilitation or refuses to participate in or cooperate for reasonable cause with either an offered program of rehabilitation or job placement assistance shall be entitled to permanent partial disability benefits in excess of the percentage of permanent physical impairment established by objective physical findings.

In *Second Injury Fund v. Furman*, 60 Ark. App. 237, 961 S.W.2d 787 (1998), we rejected an identical argument by the Fund that a claimant had a duty to pursue rehabilitation and that he failed to do so. Here, as in *Furman*, there was no evidence that either the Second Injury Fund or the employer suggested a plan of rehabilitation. Furthermore, Mr. Stephens testified at the hearing about his efforts to earn his GED and his hope to be trained in the computer field.

Affirmed.

GRIFFEN and CRABTREE, JJ., agree.