## EXPRESS HUMAN RESOURCES III/
Spirit Homes, Inc. *v.* Farren A. TERRY

CA 97-1294                    968 S.W.2d 630

Court of Appeals of Arkansas
Division III
Opinion delivered April 15, 1998

*Anderson, Murphy & Hopkins, L.L.P.,* by: *Randy P. Murphy* and *David A. Littleton,* for appellants.

*Davis & Holiman,* by: *Zan Davis,* from appellee.

MARGARET MEADS, Judge. Express Human Resources III and Spirit Homes, Inc., appeal the decision of the Workers' Compensation Commission that Farren Terry is entitled to medical benefits and temporary total disability benefits from an on-the-job injury, although he tested positive for marijuana metabolites two days after the accident. We find no error, and we affirm the Commission's decision.

Appellee was employed by appellant Spirit Homes as a maintenance worker. On March 10, 1996, he was assisting in putting a roof on a new building. A hole had been cut in the roof in order to allow some equipment to be placed in the building. Approximately forty-five minutes after the hole was cut, appellee was injured when he fell through the hole, landing on his back on the floor below. He was taken to Conway Regional Medical Center, where it was determined that he had a radial head fracture, right elbow fracture, right wrist fracture, and T-11 compression fracture, and he was admitted to the hospital. Appellee also consented to a drug-screen urinalysis, which was taken on March 12 while he was still in the hospital. The urine sample tested positive for marijuana metabolites. Appellants controverted the claim after learning of the positive results of the urine test.

A hearing was held before the administrative law judge (ALJ) on October 24, 1996. Based upon the results from the urine sample, the ALJ found that appellants had established the presence of an illegal drug pursuant to Ark. Code Ann. § 11-9-102(5)(B)(iv)(a) (Supp. 1997), thus creating a rebuttable presumption that appellee's injury was substantially occasioned by the use of marijuana under Ark. Code Ann. § 11-9-102(5)(B)(iv)(b). However, the ALJ also found that appellee had rebutted this presumption and had proven by a preponderance of the evidence that marijuana did not substantially occasion the injury, pursuant to Ark. Code Ann. § 11-9-102(5)(B)(iv)(d). She awarded appellee medical benefits and temporary total disability benefits from March 10, 1996, until June 15, 1996.[1] The Commission affirmed and adopted the ALJ's opinion. Appellants' sole point on appeal is that the Commission erred in finding that appellee had rebutted the statutory presumption created by Ark. Code Ann. § 11-9-102(5)(B)(iv).

■ Prior to the passage of Act 796 of 1993, it was the employer's burden to prove that an employee's accident was caused by intoxication or drug use. *Morrilton Manor v. Brimmage,*

---

[1] Appellee also received unemployment benefits during this time, and the ALJ noted that he was only entitled to the difference between his unemployment benefits and his temporary total disability benefits during the period of temporary total disability.

58 Ark. App. 252, 952 S.W.2d 170 (1997). However, Act 796 shifted this burden of proof by requiring the employee to prove by a preponderance of the evidence that alcohol or drug use did not substantially occasion the injury, if alcohol or drugs were found in his body after an accident. *Id.*

The relevant statutory provisions provide:

"Compensable injury" does not include:

. . . .

(iv)(a) Injury where the accident was substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of physician's orders;

(b) The presence of alcohol, illegal drugs, or prescription drugs used in contravention of a physician's orders shall create a rebuttable presumption that the injury or accident was substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of physician's orders.

. . . .

(d) An employee shall not be entitled to compensation unless it is proved by a preponderance of the evidence that the alcohol, illegal drugs, or prescription drugs utilized in contravention of the physician's orders did not substantially occasion the injury or accident.

Ark. Code Ann. § 11-9-102(5)(B)(iv)(a)-(d) (Supp. 1997).

The standard of review in workers' compensation cases is well-settled. On appeal, this court must determine whether there is substantial evidence to support the Commission's decision. *Weaver v. Whitaker Furniture Co.*, 55 Ark. App. 400, 935 S.W.2d 584 (1996). Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Id.* The evidence is viewed in the light most favorable to the findings of the Commission and is given its strongest probative value in favor of the Commission's decision. *Barrett v. Arkansas Rehabilitation Servs.*, 10 Ark. App. 102, 661 S.W.2d 439 (1983). The issue is not whether the appellate court might have reached a different conclusion from the one found by the Commission, or even whether the evidence would have supported a contrary finding, but if reasonable minds could arrive at the same decision as the

Commission, the decision must be upheld. *Harvest Foods v. Washam*, 52 Ark. App. 72, 914 S.W.2d 776 (1996).

At the hearing, appellee testified that on the day of his injury, he had worked seven days straight and was in his twenty-eighth hour of overtime. Appellee had been at work since 7:00 a.m. and had a thirty-minute lunch break; the accident occurred at approximately 3:40 p.m. He had carried pressed boards weighing between 150 and 200 pounds for most of the day, and he believed the accident was caused by his fatigue. At the time of the accident, appellee was walking forward, carrying one end of a four-foot by sixteen-foot pressed board with his supervisor, Bobby Cole, who was walking backward. Appellee could not see his feet or the hole, but he believed that Mr. Cole could see the hole because he was in front, guiding their path. Mr. Cole avoided the hole, but appellee fell through it onto the floor below. None of this testimony was controverted by appellants.

Appellee testified that he had not smoked marijuana since March 6, 1996, and denied smoking it on March 7, 8, 9, or 10. He denied being impaired on March 10. He admitted that he had smoked marijuana in the past, probably once every two weeks, and that it might be difficult for other people to detect that he had smoked marijuana. He did not challenge the urinalysis results but offered no explanation as to how the level of marijuana present in his system came to be in his body on March 12, 1996.

Three of appellee's co-workers testified on his behalf. Johnny Morales testified that he had cut the hole and thought it would be covered with decking for safety reasons. He believed that a person who was being safe and was in good mental condition could have an accident such as appellee's. Mr. Morales further testified that he had ridden to work with appellee on the day of the accident, had worked around him during the day, and had eaten lunch with him; to his knowledge, appellee did not smoke any marijuana that day. He further testified that appellee did not appear to be impaired, though he admitted he had no expertise in the detection of marijuana impairment.

Larry Hardin testified that the hole in the roof should have been covered, and he agreed with appellee that a person walking

forward while carrying a four foot by sixteen foot board would not be able to see his feet or a hole in front of him. He also stated that he was around appellee before, during, and after lunchtime, and did not see anything that would cause him to believe appellee was impaired from the use of any intoxicant. Mr. Hardin admitted that he did not know if appellee smoked marijuana, and he did not know what effect, if any, it had on him. Joseph Hooten testified that although he did not go to lunch with appellee, he worked with him "pretty much all day" and did not notice anything that would lead him to believe appellee was impaired.

Dr. Henry Simmons, a toxicologist, reviewed the results of appellee's urine tests. In his deposition, he stated that everything he had reviewed in the case was consistent with marijuana impairment on March 10; however, he also stated that the test results were consistent with appellee *not* being impaired on March 10. Dr. Simmons stated that a person might test positive for marijuana anywhere from two days to six weeks after usage, depending upon whether the individual used marijuana regularly or only one time. He explained this discrepancy stating that chronic marijuana smokers have higher THC body burdens, meaning that the metabolites build up and stay in a chronic smoker's body for a longer period of time than in a person who has smoked marijuana only one time. In addition to the frequency of use, other factors that may affect the test results include metabolic capability and hydrational status. However, he did not take these factors into consideration when reviewing appellee's test results because that information was not available to him. He admitted that based on the tests, he could tell very little about the time frame in which appellee had used marijuana.

Dr. Simmons also noted that depending upon the frequency of use, a person might remain impaired anywhere from two to twenty-four hours after ingesting marijuana, and that the strength of the marijuana used would also have a bearing on the degree of impairment. He admitted that he could not determine from the tests alone when appellee had last used marijuana, and that the level of metabolites in the urine tests revealed nothing about the extent of appellant's impairment, if any, at the time of the accident. He also opined that he would not anticipate that an isolated

use of marijuana on March 6 would prevent appellee from performing construction work safely four days later.

Appellants argue that appellee did not present sufficient evidence to rebut the presumption that his accident was substantially occasioned by the use of illegal drugs and urge this court to find appellee's denial of impairment to be incredible. They also contend, citing *Weaver, supra,* that appellee's co-workers are not credible because they were not constantly with appellee on the day of the accident and have no expertise in the field of marijuana impairment. Further, appellants argue that Dr. Simmons's deposition states that everything he reviewed in connection with this case was consistent with impairment on the date of the accident.

■ ■ The Commission, as fact finder, must resolve any conflicts in evidence. *Warwick Elec., Inc. v. Devazier,* 253 Ark. 1100, 490 S.W.2d 792 (1973). It is within the Commission's sole discretion to determine the credibility of each witness and the weight to be given to the testimony, *Johnson v. Hux,* 28 Ark. App. 187, 772 S.W.2d 362 (1989), and it is not required to believe or disbelieve the testimony of any witness. *Green v. Jacuzzi Bros.,* 269 Ark. 733, 600 S.W.2d 448 (Ark. App. 1980). Once the Commission has made its decision on issues of credibility, the appellate court is bound by that decision. *Linthicum v. Mar-Bax Shirt Co.,* 23 Ark. App. 26, 741 S.W.2d 275 (1987). Whether the rebuttable presumption that claimant's injury was substantially occasioned by the use of alcohol or illegal drugs is overcome by the evidence is a question of fact for the Commission. *Weaver, supra.*

■ The ALJ found appellee's testimony to be credible, and we are bound by that credibility assessment. It is most reasonable to believe that a person in his seventh straight day on the job and in his twenty-eighth hour of overtime would be fatigued. Moreover, although appellee was aware of the hole and knew that he should be careful, the manner in which he had to carry the large boards prevented him from being able to see where he was going. Although his supervisor could see the hole while assisting appellee in carrying the board, he led appellee directly to the hole.

■ With regard to appellants' contention that *Weaver* requires the ALJ to discount the co-workers' testimony because

they had no training in detecting marijuana impairment, such reliance is misplaced. In *ERC Contr. Yard & Sales v. Robertson*, 60 Ark. App. 310, 961 S.W.2d 36 (1998), rehearing denied, (Supp. Op. delivered on April 8, 1998), this court affirmed the Commission's grant of benefits to an injured worker who had fallen from a scaffold due to an alcohol-withdrawal seizure. Although a small amount of alcohol was found in his body, he denied having consumed any alcohol on the day of the seizure. Both his employer and his girlfriend corroborated that testimony. In both *Weaver* and *ERC*, we affirmed the decision of the Commission because in each case there was substantial evidence to support it. We note that in the case at bar, appellee's testimony alone provides substantial evidence upon which it could be determined that he rebutted the statutory presumption of Ark. Code Ann. § 11-9-102(5)(B)(iv), even had his co-workers not provided corroborating testimony.

As to appellants' argument concerning Dr. Simmons's deposition, the doctor testified that appellee's urine test results supported both impairment *and* non-impairment on the date of the accident. Suffice it to say that the Commission has the duty of weighing medical evidence as it does any other evidence, and its resolution of the medical evidence has the force and effect of a jury verdict. *Roberson v. Waste Management*, 58 Ark. App. 11, 944 S.W.2d 858 (1997).

As in all workers' compensation cases, the Commission's decision must be affirmed if there is substantial evidence to support its determination. Here, we find there was substantial evidence on which the Commission could reach its decision.

Affirmed.

ROBBINS, C.J., and GRIFFEN, J., agree.