DOUGLAS TOBACCO PRODUCTS CO., Inc. *v.*
Betty GERRALD and Second Injury Fund

CA 99-642                                                          8 S.W.3d 39

Court of Appeals of Arkansas
Division II
Opinion delivered December 22, 1999

Lee Joseph Muldrow and William Stuart Jackson, for appellant.

Compton, Prewett, Thomas & Hickey, P.A., by: Floyd M. Thomas, Jr., for appellee Betty Gerrald.

Terry Pence, for appellee Second Injury Fund.

JOHN B. ROBBINS, Chief Judge. The parties in this workers' compensation case stipulated that appellee Betty J. Gerrald suffered a compensable back injury while working for appellant Douglas Tobacco Products on October 4, 1994. Subsequent to the injury, she was assigned a thirteen percent permanent partial impairment rating to the body as a whole. The issues before the Workers' Compensation Commission were the extent of any wage-loss disability and, if any disability benefits were awarded, whether appellee Second Injury Fund was liable. After a hearing, the Commission found that Ms. Gerrald was entitled to fifty percent wage-loss disability benefits, and that Second Injury Fund had no liability. Douglas Tobacco Products now appeals, arguing that the Commission erred in not apportioning liability to the Second Injury Fund, and in finding that Ms. Gerrald had sustained a fifty percent wage-loss disability. Ms. Gerrald cross-appeals, contending that she is permanently and totally disabled and that the Commission erred in limiting her wage-loss benefits to only fifty percent. We affirm the award for fifty percent wage-loss disability, but reverse the Commission's decision that found the Second Injury Fund without liability.

When reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if supported by substantial evidence. Welch's Laundry & Cleaners v. Clark, 38 Ark. App. 223, 832 S.W.2d 283 (1992). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. City of Fort Smith v. Brooks, 40 Ark. App. 120, 842 S.W.2d 463 (1992). A decision by the Workers' Compensation Commission should not be reversed unless it is clear that fair-minded persons could not have reached

the same conclusions if presented with the same facts. *Silvicraft, Inc. v. Lambert*, 10 Ark. App. 28, 661 S.W.2d 403 (1983).

At the hearing before the Commission, Ms. Gerrald testified that she began full-time employment for Douglas Tobacco Products in 1972. Her duties included driving to various stores and stocking cigarettes, candy, and other products. Ms. Gerrald testified that her job required squatting, bending, stooping, and lifting.

Ms. Gerrald stated that, on October 4, 1994, she was lifting soft drinks from the floorboard of her car when she injured her back. She went to the doctor the next day, and eventually came under the care of Dr. Tom Fletcher. Dr. Fletcher performed surgeries at the L4-L5 and L5-S1 levels, and, according to Ms. Gerrald, her condition worsened after the surgeries. She stated that she has been unable to work since the date of her compensable injury, and that although she loved her job and wanted to return to work, her physical condition prevented her from doing so. She testified:

> Some mornings I can't get out of bed. Some mornings I can't walk. Sometimes I get in a chair and I can't get out of the chair. Out of a typical week, this happens to me three or four days of the week. Some weeks I can't get out of the house all week, and some weeks I can get out three or four days. You never know when you wake up in the morning.

On cross-examination, Ms. Gerrald acknowledged that she had a similar episode in 1990 when she reached to pick up a book out of her car, twisted, and hurt her back. As a result of that incident, she was in the hospital for seven or eight days, but then returned to work. Then, in 1992, she slipped on a wet floor and suffered further difficulty with her back. However, after presenting to the doctor following the 1992 incident, Ms. Gerrald recalled missing no work and could not remember being placed on any physical restrictions.

The medical evidence presented at the hearing showed that, after the 1990 incident, Ms. Gerrald was diagnosed with mild degenerative changes of the lower lumbar spine with disk desiccation at the L4-L5 and L5-S1 levels. At that time, Dr. Freddie Contreras reported, "I would expect her to go on to make a full recovery with no permanent medical impairment." After the 1992

incident, Ms. Gerrald was diagnosed with mild to moderate degenerative disc disease as well as herniations at both L4–L5 and L5–S1.

Dr. Anthony Russell examined Ms. Gerrald subsequent to her surgeries and reported:

> Gerrald returns today continuing to have pain in her back and right lower extremity. A new complaint consists of pain in the left hip and down the left leg. This goes to the foot and does appear to involve the top of the foot. The pain is significant. She can't sleep at night. She is not able to sit or stand for extended periods of time. She has had a significant amount of trouble with pain when she leans forward for any reason. I acknowledge the fact that Gerrald is very likely having significant pain.

Dr. Russell also gave an opinion regarding the factors contributing to her impairment rating, and concluded that eight percent was present in 1992, while an additional five percent was caused by the multiple-level surgeries following her compensable injury. He further reported:

> By reviewing the medical records, it is easy to establish that the patient showed progressive deterioration of her lumbar spine over successive MRI scans. The initial MRI scan performed in March 1990 showed only mild degenerative changes of the lower lumber spine and disk desiccation at L4–L5 and L5–S1. In May 1992, the patient underwent a second MRI scan, that at this time first documented the presence of a small central disk herniation at L4–L5 and the right paracentral herniated disk at L5–S1. The patient was also noted at that point to have spondylolysis at L5–S1. The patient reported the injury to her lumbar spine while moving the drinks from the back seat in early October 1994. A subsequent MRI scan performed on 10/21/94 again showed a small, posterior herniation of L4–L5 and L5–S1 disk and degenerative arthritis. There appears to have been little, if any, change in the studies of 1994 when compared to the study of 1992. Of course, this is comparing radiologist's interpretation only.
>
> It would appear that the disk herniations present in 1994 were also present in May 1992. It appears that the incident in October 1994 that ultimately prompted surgical decompression, served only to aggravate a pre-existing condition. Again, this is based on the near perfect correlation between the radiologist's report of May 1992 as compared to the October 1994 study. Therefore, it would

appear that the pre-existing manifest as early as 1992 was a major contributing factor to her ultimate surgical procedure in 1995.

Judy Benson, a vocational rehabilitation specialist, evaluated Ms. Gerrald's potential to return to work. Ms. Benson interviewed Ms. Gerrald and examined a functional-capacity evaluation as well as the relevant medical records. Ms. Benson concluded that, while Ms. Gerrald is limited to jobs that are light or sedentary, she was not completely unable to work. Taking into account Ms. Gerrald's background and physical limitations, Ms. Benson suggested jobs such as home-based telephone marketing, or employment as a receptionist or cashier.

██ Appellant's first argument for reversal is that the Commission erred in failing to apportion any of the wage-loss disability benefits to Second Injury Fund. Arkansas Code Annotated section 11-9-525(a)(1) and (2) (Repl. 1996) provides that the Second Injury Fund is established and designed to insure that an employer employing a handicapped worker will not, in the event such worker suffers an injury on the job, be held liable for a greater disability or impairment than actually occurred while the worker was in the employer's employment. *POM, Inc. v. Taylor*, 325 Ark. 334, 925 S.W.2d 790 (1996). The appellant correctly asserts that the test that is used to determine whether the Second Injury Fund must share liability for compensating an injured worker was stated in *Mid-State Constr. Co. v. Second Injury Fund*, 295 Ark. 1, 746 S.W.2d 539 (1988), as follows:

> First, the employee must have suffered a compensable injury at his present place of employment. Second, prior to that injury the employee must have had a permanent partial *disability* or *impairment*. Third, the disability or impairment must have combined with the recent compensable injury to produce the current disability status. [Emphasis in original.]

*Id.* at 5, 746 S.W.2d at 541. The appellant argues that, because the evidence clearly established all three of the above elements, the Commission erred in failing to find Second Injury Fund liable for any of the wage-loss benefits.

██ We agree that the three elements set out in *Mid-State Constr. Co. v. Second Injury Fund, supra*, were established in this case. The first element was clearly satisfied because all parties agreed that

Ms. Gerrald suffered a compensable injury. The Commission acknowledged that the second element was also established given that it credited Dr. Russell's opinion that Ms. Gerrald was eight percent permanently impaired prior to the compensable injury. However, the Commission specifically found that, because the prior impairment did not combine with the compensable injury to produce her current disability status, Second Injury Fund was free from liability. This finding was not supported by substantial evidence.

In ruling that the prior impairment and compensable injury did not combine to produce the fifty percent disability, the Commission relied on its decision in *Ellison v. Therma-Tru*, which it filed on June 11, 1998. In that case, it was determined by the Commission that, although five percent of claimant's six percent anatomical impairment was due to a preexisting disk disease, Second Injury Fund was nonetheless not liable because the disk disease was asymptomatic prior to the compensable injury. However, subsequent to the filing of the Commission's opinion in the instant case, we reversed it in a published opinion, *Ellison v. Therma-Tru*, 66 Ark. App. 286, 989 S.W.2d 987 (1999). In reversing, we held that fair-minded people could not agree that the combined effect of appellant's work-related injury and her preexisting condition did not combine to produce her current disability.

As in *Ellison v. Therma-Tru, supra*, the Commission in this case erred in failing to find that the third element of the *Mid-State* test was not satisfied. The medical evidence revealed that Ms. Gerrald was diagnosed with disk desiccation at the L4-L5 and L5-S1 levels in 1990, and with herniations at these levels in 1992. Significantly, these are the levels that were surgically treated following her 1994 injury. Moreover, Dr. Russell attributed the majority of Ms. Gerrald's permanent impairment rating to conditions that preexisted the compensable injury. He also gave the opinion that her back condition as diagnosed in 1992 "was a major contributing factor to her ultimate surgical procedure in 1995." While it is true that Ms. Gerrald missed only a week of work after the 1990 incident, and missed no work after the 1992 incident, a claimant's ability to return to work after her prior injuries is not determinative of Second Injury Fund liability. *See POM, Inc. v. Taylor, supra*; *Hawkins Constr. Co. v. Maxwell*, 325 Ark. 133, 924 S.W.2d 789 (1996). Given the medical evidence presented in this case, we find that substantial evidence does not support the Commission's deter-

mination that the injuries did not combine to produce the permanent impairment, and that Second Injury Fund was not liable for a portion of the disability benefits.

Appellant's remaining argument is that the Commission erred in awarding a fifty percent wage-loss disability. Arkansas Code Annotated section 11-9-522(b)(1) (Repl. 1996) provides:

> In considering claims for permanent partial disability benefits in excess of the employee's percentage of permanent physical impairment, the commission may take into account, in addition to the percentage of permanent physical impairment, such factors as the employee's age, education, work experience, and other matters reasonably expected to affect his future earning capacity.

The appellant notes that Ms. Gerrald has more than twenty years' experience in sales and was described by the vocation rehabilitation specialist as being personable and professional. The appellant further points out that the specialist identified several jobs that she thought to be suitable, and that many of these jobs paid more than Ms. Gerrald was making at the time of her compensable injury. Finally, appellant submits that Ms. Gerrald's failure to return to work was in part the result of her lack of motivation. Under these circumstances, it is contended that the fifty percent wage-loss disability award was excessive.

■ We find substantial evidence to support the wage-loss disability awarded by the Commission. The medical evidence indicated that Ms. Gerrald's physical abilities are limited and that she remains in a substantial amount of pain. Furthermore, Ms. Gerrald's testimony revealed that her condition has worsened since the surgeries to the point where she is often immobile. She testified that on some days she cannot get out of the house or even walk. Although there was evidence that there may be some jobs available to Ms. Gerrald, there was ample evidence to support the finding that she has suffered a fifty percent reduction in her wage-earning capacity.

Finally, we turn to Ms. Gerrald's cross-appeal. She contends that the Commission erred in finding that she was only fifty percent wage-loss disabled. She notes that, although the vocational specialist thought that suitable jobs were available, she received no offers of employment. Ms. Gerrald asserts that, due to her physical disabili-

ties brought on by the compensable injury, she is completely unable to work. She also contends that the Commission failed to state facts in support of its award, and urges this court to remand for specific findings of fact.

■ We conclude that the Commission stated sufficient facts in support of the fifty percent wage-loss disability award, and that the award is supported by substantial evidence. The Commission noted in its opinion that Ms. Gerrald's compensable injury resulted in a significant amount of anatomical impairment that clearly impedes her ability to return to the work force. However, it also acknowledged the fact that several sedentary jobs were identified by the vocation specialist, but that Ms. Gerrald showed little motivation to pursue any employment possibilities. Lack of motivation to return to work can be considered by the Commission in awarding wage-loss benefits. *Bradley v. Alumax*, 50 Ark. 13, 899 S.W.2d 850 (1995). Based on the evidence presented, we affirm the Commission's finding that Ms. Gerrald was entitled to no more than a fifty percent wage-loss disability.

For the foregoing reasons, we affirm the Commission's wage-loss award. However, we reverse and remand to the Commission with respect to its determination that the Second Injury Fund was not liable for payment of the wage-loss benefits.

Affirmed in part; reversed in part and remanded on direct appeal. Affirmed on cross-appeal.

PITTMAN and HART, JJ., agree.