Alvin STIGER *v.* STATE LINE TIRE SERVICE and
Federated Insurance Company

CA 99-1426                                    35 S.W.3d 335

Court of Appeals of Arkansas
Divisions IV and I
Opinion delivered December 20, 2000

*Paul E. Reeves*, for appellant.

*Dunn, Nutter, Morgan & Shaw*, by: *Nelson V. Shaw*, for appellee.

SAM BIRD, Judge. Alvin Stiger appeals a decision of the Workers' Compensation Commission in which he was awarded temporary total disability benefits, but denied additional

benefits under Ark. Code Ann. § 11-9-505 (Repl. 1996), which provides for additional benefits to an employee when an employer willfully discriminates against the employee because he has filed a claim for workers' compensation benefits. On appeal, Stiger argues that the Commission unconstitutionally denied him his right of due process by substituting its own credibility determination for that of the administrative law judge, by improperly speculating on the *motives* of a witness rather than the *testimony* of the witness, and by overturning the initial findings of the administrative law judge regarding credibility.

At the hearing, Stiger testified that he began working for appellee State Line Tire Service in February 1998. He broke his hand on April 6 when he was removing the springs on an R.V. motor home. He sought medical attention and was eventually referred to Dr. Jeffrey T. DeHaan, an orthopedic surgeon, who put his hand in a cast and prohibited him from returning to work. Stiger's hand remained in a cast for five weeks, and he then received physical therapy for two weeks. The parties stipulated that temporary total disability was paid from May 15, 1998, to June 25, 1998. Stiger was released to return to work on June 29th. After his doctor's appointment on June 23, he returned to State Line and gave Ronella Fett, the company's bookkeeper, a document stating that he had been released to work. He testified that he informed Ronella Fett that he would be returning to work on Monday, June 29th.

Stiger testified that during the time he was off work, Wendell Fett, the owner and general manager of State Line, called him and asked him to return to work. Stiger told Fett that he was in physical therapy and would return when he was finished. Stiger said that Fett replied that the best therapy he could seek would be pulling on wrenches.

Stiger testified that shortly before 7 a.m. on the morning of June 29, he called Wendell Fett to make sure that he could go to work, and that Wendell Fett told him that he was not needed. He admitted on cross-examination that he never received any documentation that he had been fired, nor did he file for unemployment benefits.

Betty Reel, a supervisor for State Line, testified that Stiger had worked under her supervision, and that, after Stiger injured his hand, his job responsibilities were performed by J.T., a mechanic for State Line. She stated that as a supervisor she had the authority to terminate employees, but that she neither terminated Stiger nor recommended that he be terminated. She said that while Stiger was off work recuperating from his hand injury she spoke with him on a couple of occasions and inquired how his hand was healing and when he would be able to return to work. She also testified that Wendell Fett, the owner and general manager of State Line, usually informed her when he terminated someone so she could begin looking for a replacement. She stated that at no time did Wendell Fett inform her that he had fired Stiger.

Ronella Fett testified that she handled Stiger's workers' compensation claim and that nothing in the business records showed that Stiger had been fired; they indicated that his status was "pending. ... I have him as an employee that was on workman's comp and he failed to return to work after he was released." Further, she stated that when someone is fired, or quits, that status is reflected on the computer payroll sheet. Stiger's payroll sheet at the time of the hearing did not reflect that he had been terminated; it was, instead, left blank. She said, "I have not been told that he has been terminated or let go or anything. Until I hear that, I don't put anything in there." She also stated that before an employee is terminated, "they will come into the office with Wendell [Fett] and their immediate supervisor and they will discuss the problem and then they will be fired." She maintained that no one had been hired to replace Stiger before he was released to return to work, and that if someone had been, she would have known about it as she would have entered that into the payroll records. She said that State Line did not hire a replacement for Stiger until September 1998.

Wendell Fett testified that when Stiger injured his hand at work, the injury was accepted as being job related. He stated that during the time that Stiger was unable to work they needed his help, so someone from State Line kept in contact with the nurse who was managing Stiger's case so they would know when he would be able to return to work. Wendell Fett stated that he has two supervisors who have the authority to hire and fire employees, but neither he nor either supervisor told Stiger not to return to work.

Wendell Fett also testified that Stiger called him around the end of June to tell him that he had been released by the doctor and wanted to know if he could come back to work. Wendell Fett said that he told Stiger to come in the following day and they would discuss it, meaning that he needed to find out just how much Stiger was capable of working, but Stiger never showed up. Wendell Fett said that Stiger was a good employee and he had no reason to fire him. On cross-examination, Wendell Fett admitted that when an employee is hurt on the job, the company's insurance premiums increase. Wendell Fett also admitted contacting Stiger when Stiger was still in physical therapy and asking him if he would consider returning to work on a part-time basis, performing light-duty work. He did not deny that he told Stiger the best therapy he could get would be by pulling on some wrenches. He also stated that when Stiger was released to return to work, he had not replaced him as the brakeman. He stated, "If I have a man that is capable of doing brake work, it costs me money not to have him there." He testified that he was not in the office the day Stiger brought the note in releasing him to return to work, and that another employee had told Stiger to call him.

The administrative law judge found that Stiger was entitled to temporary total disability benefits from April 14 to June 29, 1998; that State Line had willfully terminated Stiger for filing his workers' compensation claim, which violated Ark. Code Ann. § 11-9-107 (Repl. 1996), and he fined State Line $7,000 and directed that it be paid into the Second Injury Trust Fund. However, the law judge did not award Stiger any additional benefits under Ark. Code Ann. § 11-9-505, which requires the offending employer to pay the employee the difference between the benefits he received and the average weekly wages he lost during the period the employer did not allow him to return to work. State Line appealed to the full Commission arguing that substantial evidence did not support the law judge's finding that it had willfully terminated Stiger. Stiger filed a cross-appeal contending that the law judge had misinterpreted Ark. Code Ann. § 11-9-505.

In an opinion dated September 16, 1999, the Commission affirmed the law judge's finding that Stiger was entitled to temporary total disability benefits from the date of his injury until June 29, 1998. However, the Commission denied benefits under § 11-9-505, holding that Stiger was not willfully terminated from State

Line, that State Line had not violated Ark. Code Ann. § 11-9-107, and that Stiger had voluntarily left State Line. Stiger then filed a notice of appeal and a motion for reconsideration on the ground that the Commission denied his right to due process by overruling the specific findings of the law judge and substituting its own findings on the credibility of the witnesses when it did not personally observe the witnesses. The Commission denied Stiger's motion for reconsideration in an order dated November 16, 1999, and he brings this appeal from both the September 16, 1999 order and the November 16, 1999 order.

In a lengthy opinion denying Stiger's motion for reconsideration, the Commission conceded that its credibility determination was at odds with the credibility determination of the law judge. However, it stated that its statutorily mandated de novo review of the record, including its consideration of credibility issues, does not result in any denial of due process even though the Commission makes credibility findings without personally hearing and observing the live testimony of the witnesses.

Stiger's first argument on appeal is the same argument that he made in his motion for reconsideration: that the Commission erred and violated his right to due process by substituting its own credibility determinations for that of the law judge. Stiger contends that even though "the commission has the ability and duty to conduct a de novo review, it is improper for the commission to pass on intangible issues not in the record and determine credibility when such a determination has already been made by the Administrative Law Judge." He contends that since the law judge had found that Wendell Fett was not credible, the Commission cannot make the finding that Fett *was* credible. Stiger also contends that the Commission denied him the right of due process when it improperly speculated on the *motives* of a testifying witness instead of reviewing only the *testimony transcribed*.

Arkansas Code Annotated section 11-9-207 (Repl. 1996) grants to the Commission the power and the duty to determine all claims for compensation. In addition, the statute gives the Commission the authority to appoint administrative law judges to conduct hearings and investigations and make whatever orders, decisions, and determinations are required by a rule or order of the Commission. *See* Ark. Code Ann. § 11-9-205 (Repl. 1996). Arkansas Code

Annotated section 11-9-704 (Repl. 1996) establishes the procedures for filing a claim for compensation with the Commission, and subsection (b)(1) allows the Commission to make or cause to be made such investigations as it considers necessary in respect to the claim, and to order a hearing on the claim. After a decision has been made with respect to the claim, § 11-9-704(b)(6) (Repl. 1996) provides that, upon proper application, the decision of the administrative law judge shall be reviewed by the full Commission. Section 11-9-704(b)(6)(A) provides that, "the full commission shall review the evidence or, if deemed advisable, hear the parties, their representatives, and witnesses, and shall make awards, together with its rulings of law, ...." Section (7) permits the Commission to remand any case to a single member of the Commission or to an administrative law judge for the purpose of taking additional evidence. That evidence shall then be delivered to the Commission and shall be taken into consideration before rendering any decision. Arkansas Code Annotated section 11-9-704(c)(2) requires that when deciding any issue, the law judges and the Commission shall determine, on the basis of the record as a whole, whether the party having the burden of proof on the issue has established it by a preponderance of the evidence. In determining whether a party has met its burden of proof on an issue, administrative law judges and the Commission shall weigh the evidence impartially and without giving the benefit of the doubt to any party. *See* Ark. Code Ann. § 11-9-704(c)(4). The legislature has also established a procedure for a review of awards by the Commission and by the court of appeals. *See* Ark. Code Ann. § 11-9-711 (Repl. 1996).

■■ Statutes are presumed to be constitutional and the burden of proving otherwise is placed upon the party challenging the legislation. *Golden v. Westark Community College*, 333 Ark. 41, 969 S.W.2d 154 (1998). All doubts are resolved in favor of a statute's constitutionality. *Id*. The U.S. Supreme Court has identified three factors to be considered when determining what type of due process is warranted. These factors, which were adopted by our court in *Quinn v. Webb Wheel Prods.*, 59 Ark. App. 272, 957 S.W.2d 187 (1997), are: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional procedural safeguards, and (3) the government's inter-

est, including the fiscal and administrative burdens that additional or substituted procedures would entail. *Id.*

■ The Arkansas Supreme Court and the Court of Appeals have followed long-established rules when reviewing decisions of the Commission. We will affirm the findings of the Commission if they are supported by substantial evidence. *See Scarbrough v. Cherokee Enters.*, 306 Ark. 641, 816 S.W.2d 876 (1991). Substantial evidence is that evidence a reasonable person might accept as adequate to support a conclusion. *Douglas Tobacco Prods. Co. v. Gerald*, 68 Ark. App. 304, 8 S.W.3d 39 (1999). A decision of the Commission will not be reversed unless it is determined that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Id.*

■ Neither the Workers' Compensation Act nor Arkansas case law contains a requirement that the Commission personally hear the testimony of any witness, and nothing in the statutes precludes the Commission from accepting or rejecting any finding made by the law judge, including findings pertaining to the credibility of witnesses. At issue in this case is whether a claimant's right of due process is violated by a law that allows the Commission to make credibility determinations, regardless of whether the Commission has personally taken live testimony, thus rejecting the credibility assessments made by the law judge, who was the one who actually observed the witnesses.

The standard of review by which the appellate court considers appeals from the Workers' Compensation Commission was challenged and upheld by the Arkansas Supreme Court. *Scarbrough v. Cherokee Enters.*, *supra*. In that case, Scarbrough urged the court to adopt a new standard of review in workers' compensation cases in which the appellate court would require a finding that the Commission's decision is supported not just by "substantial evidence," but by "substantial evidence on the record as a whole." If the court should adopt that standard of review, the appellate court would be allowed to consider the entire record compiled by the administrative law judge rather than reviewing only the findings of the Commission. The court rejected that argument and concluded:

> [W]e feel the constraint of stare decisis, especially when dealing with legislative intent in the interpretation of a statute. Section 11-9-711(b)(4) requires the Court to affirm the Commission's deci-

sion if it is supported by substantial evidence. This Court and the Court of Appeals have interpreted substantial evidence consistently over the past fifty years. The General Assembly is presumed to have known of our decisions. ... If we were to reinterpret the term "substantial evidence" at this point to include "on the record as a whole," we would be overruling precedent without a compelling reason appearing in this case.

306 Ark. at 644-45, 816 S.W.2d at 876.

Although the court said that an argument that a claimant's right to due process might be persuasive, it "save[d] for another day the question of whether a constitutional violation may result when the Workers' Compensation Commission and a reviewing court are permitted to ignore the findings of an Administrative Law Judge, the only adjudicator to see and hear the witnesses." 306 Ark. at 642, 816 S.W.2d at 876.

This issue was addressed in 1989 in a masterful concurring opinion of the late Judge James Cooper to a denial of a petition for rehearing, *see Johnson v. Hux*, 28 Ark. App. 187, 772 S.W.2d 362 (1989). Judge Cooper thought the issue of the appellant's denial of due process in that case was preserved for appeal. After reviewing the Arkansas procedure, the foreign case law cited by the appellant, and the opinion expressed in 3 A. Larson, *The Law of Workmen's Compensation*, he concluded:

> The procedure used by the Commission must be fundamentally fair and due process requires a hearing before one's rights are adjudged, *Duggan v. Potlatch Forests, Inc.*, 92 Idaho 262, 441 P.2d 172 (1968), and the hearing and review by the Commission must be conducted according to the prescribed statutory law and in a reasonable manner. *Pollard v. Krispy Waffle # 1*, 63 N.C.App. 354, 304 S.E.2d 762 (1983). Where a claimant is given appropriate notice and opportunity to be heard, it does not constitute a denial of due process for the Commission to make findings of credibility without the benefit of live testimony. *Id.; see also Eastham v. Whirlpool Corp.*, 524 N.E.2d 23 (Ind. App. 3rd Dist, 1988). In *Bowman Transportation v. Arkansas-Best Freight*, 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974), the United States Supreme Court held that, in matters of credibility, an agency is not bound by the findings of its hearing examiners.

> In Arkansas, it is the Commission's duty to make findings of fact and to assess the credibility of witnesses. In exercising this

duty, the Commission may hear the parties, their representatives and witnesses, Ark. Code Ann. § 11-9-704(b)(6) (1987), permit the introduction of additional evidence, Ark. Code Ann. § 11-9-705(c); study briefs in pending cases; Rules of the Commission, Rule 18; or hear oral arguments if requested by either the parties or the Commission; Rules of the Commission, Rule 17. Clearly the legislature and the Commission have provided statutes and Rules which provide a claimant with several opportunities to be heard without harming the purpose of speedy recovery. I believe that the procedure used in Arkansas does not violate due process.

This issue was also addressed, although not in a due-process context, in *Dedmon v. Dillard Dep't Stores, Inc.*, 3 Ark. App. 108, 623 S.W.2d 207 (1981), where we said:

First, it is said that since the pivotal issue here is credibility and only the administrative law judge saw and observed the witnesses, it is his findings of fact which we should test by the substantial evidence rule. This is not the first time this argument has been made. In *Ark. Coal Co. v. Steele*, 237 Ark. 727, 375 S.W.2d 673 (1964), the court rejected the argument relying upon two previous decisions and two sections of the Workers' Compensation Act. One section of the Act relied upon is now Ark. Stat. Ann. 81-1325 (b) (Supp. 1981) [now Ark. Code Ann. 11-9-711(b)(3)(A) and (B) (Repl. 1996)] and provides:

Upon appeal to the Court of Appeals no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the Commission, within its power, shall be conclusive and binding upon said Court and shall be given the same force and effect as in cases heretofore decided by the Supreme Court of Arkansas[.]

The other statutory section relied upon is now Ark. Stat. Ann. 81-1323 (b) (Repl. 1976) [now Ark. Code Ann. § 11-9-704(b)(6)(A) (Repl. 1996)], the pertinent part of which provides that on appeal to the full commission it "shall review the evidence or, if deemed advisable, hear the parties, their representatives, and witnesses, and shall make awards, . . ."

In relying upon the above sections the court in *Ark. Coal Co. v. Steele*, pointed out that it had said in *Moss v. El Dorado Drilling Co.*, 237 Ark. 80, 371 S.W.2d 528 (1963) that "it is the duty of the Commission to make a finding according to a preponderance of the evidence and not whether there is any substantial evidence to support the finding of the referee." And the court in *Ark. Coal Co.*

*v. Steele* also pointed out that in *Potlatch Forests, Inc. v. Smith,* 237 Ark. 468, 374 S.W.2d 166 (1964), it had rejected the contention that where no additional testimony is presented to the commission the referee is the sole and exclusive judge of the evidence and credibility of the witnesses because he was in position to see and consider the manner and demeanor of each witness who testified.

Although the sections relied upon by *Dedmon* have been rewritten, their meaning remains the same. Arkansas Statutes Annotated section 81-1325 is now Ark. Code Ann. § 11-9-711(b)(3)(A) & (B), and it provides:

Upon appeal to the court, no additional evidence shall be heard.

In the absence of fraud, the findings of fact made by the commission, within its power, shall be conclusive and binding upon the court and shall be given the same force and effect as in cases heretofore decided by the Supreme Court, except subject to review as in subdivision (b)(4) of this section.

Arkansas Statutes Annotated section 81-1323(b) is now Ark. Code Ann. § 11-9-704(b)(6)(A) and it states:

If an application for review is filed in the office of the commission within thirty (30) days from the date of the receipt of the award, the full commission shall review the evidence, or, if deemed advisable, hear the parties, their representatives, and witnesses, and shall make awards, together with its rulings of law, and filed same in like manner as specified in the foregoing.

The United States Supreme Court in *United States v. Raddatz,* 447 U.S. 667 (1980), has addressed the issue of whether a district court's de novo determination of credibility findings violates due-process rights even though a magistrate, not the district court, heard and observed the live testimony. Raddatz contended that the review procedures established by a provision of the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), permitting the district court judge to make a de novo determination of contested credibility assessments without personally hearing the live testimony, violated his due-process rights under the Fifth Amendment to the United States Constitution. In other words, he contended that "[t]he one who decides must hear." At one point the Court analogized the district court's authority to review the magistrate's decision to that of an adminis-

trative agency reviewing the decision of a hearing officer. Thus, we are justified in applying the principles stated in *Raddatz* to the argument in this case. In holding that Raddatz's constitutional right of due process had not been violated by the district court not personally observing the witnesses, the Court stated:

> We conclude that the due process rights claimed here are adequately protected by § 636(b)(1). While the district court judge alone acts as the ultimate decision maker, the statute grants the judge the broad discretion to accept, reject, or modify the magistrate's proposed findings. That broad discretion includes hearing the witnesses live to resolve conflicting credibility claims. Finally, we conclude that the statutory scheme includes sufficient procedures to alert the district court whether to exercise its discretion to conduct a hearing and view the witnesses itself.

447 U.S. at 680-81.

■ The Supreme Court cautioned in *Raddatz*, "To be sure, courts must always be sensitive to the problems of making credibility determinations on the cold record." 447 U.S. at 679. By allowing the Commission to "review the evidence or, if deemed advisable, hear the parties, their representatives, and witnesses," Ark. Code Ann. § 11-9-704(b)(6)(A) (Repl. 1996) adequately protects a claimant's due-process rights. When the Commission reviews a cold record, demeanor is merely one factor to be considered in credibility determinations. Numerous other factors must be included in the Commission's analysis of a case and reaching its decision, including the plausibility of the witness's testimony, the consistency of the witness's testimony with the other evidence and testimony, the interest of the witness in the outcome of the case, and the witness's bias, prejudice, or motives. The flexibility permitted the Commission adequately protects the claimant's right of due process of law.

■ Finally, Stiger argues that substantial evidence does not support the Commission's decision that the employer did not violate Ark. Code Ann. § 11-9-107. When the Workers' Compensation Commission denies coverage of a claim finding that the claimant has failed to meet his burden of proof, the substantial-evidence standard of review requires this court to affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Cooper v. Hiland Diary*, 69 Ark. App. 200, 11 S.W.3d 5

(2000). When determining the sufficiency of the evidence to sustain the findings of the Commission, we review the evidence in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The question before this court is not whether the evidence would have supported findings contrary to the ones made by the Commission; there may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact or heard the case de novo. *Id.*

Arkansas Code Annotated section 11-9-107 provides:

> (a)(1) Any employer who willfully discriminates in regard to the hiring or tenure of work or any term or condition of work of any individual on account of the individual's claim for benefits under this chapter, or who in any manner obstructs or impedes the filing of claims for benefits under this chapter, shall be subject to a fine of up to ten thousand dollars ($10,000) as determined by the Workers' Compensation Commission.

> ....

> (b)(1) In addition, the prevailing party shall be entitled to recover costs and a reasonable attorney's fee payable from the fine.

Stiger argues that this case turns upon his credibility and that of Fett because the conversation between them on the morning that Stiger called Fett has been given two different interpretations. Stiger testified that Fett told him that he was no longer needed and that he had been replaced, whereas Fett stated that he told Stiger to come in the next morning to discuss his work schedule. However, there was also testimony that Stiger had not been terminated. Ronella Fett testified that she was the bookkeeper in charge of payroll and she did not have any documentation that Stiger had been fired. His case file simply reflected that he had been injured, paid workers' compensation benefits, and had not returned to work when he was released by his doctor. Stiger's supervisor testified that she had the authority to hire and fire personnel, and that, to her knowledge, Stiger had not been fired. She said if Stiger had been terminated, Fett would have told her to begin looking for a replacement. There was also testimony that Stiger's position was not filled

until September 1998. That constitutes substantial evidence to affirm the Commission's finding that State Line did not willfully terminate Stiger.

Affirmed.

JENNINGS, NEAL, and MEADS, JJ., agree.

ROBBINS, C.J., and GRIFFEN, J., concur.

JOHN B. ROBBINS, Chief Judge, concurring. The process afforded workers' compensation claimants in Arkansas appears to ensure due process under the Arkansas and United States Constitutions. While I agree with the result reached in this case, I write separately to discuss the standard of review articulated in appeals from the Workers' Compensation Commission. A conclusion on witness credibility is a finding of fact. *See* 8 Arthur Larson, *Larson's Workers' Compensation Law*, § 130.05[1][b] (2000). Thus, there must be substantial evidence to support this factual finding like any other finding of fact. Some Arkansas cases, however, fail to accurately articulate, or at least completely articulate, the proper standard of review and instead summarily state that the appellate courts are bound by any credibility determination made by the Commission, leaving no room for reversal of the Commission's credibility determinations.

To the contrary, Arkansas Code Annotated section 11-9-711 (Repl. 1996), which governs our standard of review of the Commission's decisions, expressly authorizes this court to reverse findings of fact that are not supported by substantial evidence. This statute states in pertinent part:

(b) Award or Order of Commission—Appeal.
(1) A compensation order or award of the commission shall become final unless a party to the dispute shall, within thirty (30) days from receipt by him of the order or award, file notice of appeal to the Arkansas Court of Appeals, which is designated as the forum for judicial review of those orders and awards.

. . . .

(2) Appeals from the commission to the court shall be allowed as in other civil actions and shall take precedence over all other civil cases appealed to the court.

(3)(A) Upon appeal to the court, no additional evidence shall be heard.

(B) In the absence of fraud, the *findings of fact* made by the commission, within its powers, *shall be conclusive and binding* upon the court and shall be given the same force and effect as in cases heretofore decided by the Supreme Court, *except subject to review as in subdivision (b)(4) of this section.*

(4) The court shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the order or award, upon any of the following grounds, and no other:

(A) That the commission acted without or in excess of its powers;

(B) That the order was procured by fraud;

(C) That the facts found by the commission do not support the order or award; or

(D) That the order or award was not supported by substantial evidence of record.

(Emphasis added.) Subsections (b)(4)(C) and (b)(4)(D) clearly mandate that in reviewing the questions of law, if the facts do not support the decision, or if there is not substantial evidence to support the decision, then we must reverse. These are simply two avenues with a common destination — that is, to perform a review that has some meaning by reviewing the facts upon which a decision is made.

The standard of review is reflected in case law as well. We will affirm the Commission if its findings are supported by substantial evidence. *Burlington Indus. v. Pickett*, 336 Ark. 515, 988 S.W.2d 3 (1999). Substantial evidence is that evidence a reasonable person might accept as adequate to support a conclusion. *Williams v. Prostaff Temporaries*, 336 Ark. 510, 988 S.W.2d 1 (1999). A decision of the Commission will not be reversed unless it is determined that fairminded persons could not have reached the same conclusions if presented with the same facts. *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999).

Moreover, both the supreme court and our court have said that the determination of the credibility of the witnesses and the weight to be given their testimonies are matters exclusively within the province of the Commission. *See, e.g., Ester v. Nat'l Home Centers, Inc.*, 335 Ark. 356, 981 S.W.2d 91 (1998); *Continental Express v. Harris*, 61 Ark. App. 198, 965 S.W.2d 811 (1998). However, this does not mean that the Commission's decisions are totally insulated from judicial review. *Jordan v. J. C. Penney Co.*, 57 Ark.

App. 174, 944 S.W.2d 547 (1997). Nor does it mean that the Commission may arbitrarily disregard the testimony of any witness. *Boyd v. Dana Corp.*, 62 Ark. App. 78, 966 S.W.2d 946 (1998). Thus, given that a credibility determination is a finding of fact that must be supported by substantial evidence, there appears to be an inherent contradiction in the authorities governing review of the Commission's credibility determinations. This contradiction is readily resolved by simply clarifying that the substantial evidence standard of review, as authorized in section 11-9-711(b)(4)(C) and (D), includes credibility determinations made by the Commission.

If we are prepared to stand behind the constitutionality of the Commission's ability to discern credibility on a "cold record," then we should be equally prepared to apply the substantial evidence standard of review to the Commission's finding of fact on credibility of witnesses, instead of simply declaring that we are "bound" by it, as we did in *Daniels v. Affiliated Foods Southwest*, 70 Ark. App. 319, 17 S.W.3d 817 (2000), *Ford v. Chemipulp Process, Inc.*, 63 Ark. App. 260, 977 S.W.2d 5 (1998), *Express Human Resources III v. Terry*, 61 Ark. App. 258, 968 S.W.2d 630 (1998), and *Linthicum v. Mar-Bax Shirt Co.*, 23 Ark. App. 26, 741 S.W.2d 275 (1987), to name a few. What is missing from these cases is a statement of the statutory authorization providing for appellate review of the facts supporting the Commission's decision, which we recognized in *Boyd v. Dana Corp.*, *supra*. What is also missing from these cases is the statement that we are bound by the Commission's credibility determinations only where they are supported by substantial evidence.

Other factors, such as plausibility of the witness's testimony, the consistency of the testimony with the other evidence, the interest of the witness in the outcome of the case, and the bias, prejudice, or motives of the witness, must play a part in the Commission's analysis. *See Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951). Observations of demeanor or appearance are often denoted as "testimonial inferences," whereas those inferences drawn from the substance of the testimony or the evidence are often called "derivative inferences." *See Kroger Co. v. Morris*, 415 S.E.2d 879 (Va. 1992). Our supreme court has recognized that the Commission may rely on the administrative law judge's observations and comments concerning the claimant's demeanor, conduct, appearance, or reactions at the hearing. *See Wade v. Mr. C. Cavenaugh's*, 298 Ark. 363, 768 S.W.2d 521 (1989). The appellate courts can likewise take into consideration those same factors and infer-

ences, when reflected in the record, in determining whether substantial evidence supports the Commission's finding on credibility.

We should restate this standard of review to more accurately describe the review we are required to give, and to ensure a common-sense, fair, and even-handed application of it.

In this case, the Commission's decision displays a substantial basis for the conclusion on credibility, and the majority opinion reflects consideration of the relevant factors bearing on that factual conclusion, and therefore I concur. I am authorized to state that Judge GRIFFEN joins in this concurrence.